**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DAMINION T. TITTIES, a/k/a Damion
Tyrone Tittle, a/k/a Damion Tyron Tittles,
a/k/a Capone,

      Defendant - Appellant.

No. 15-6236

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:15-CR-00018-R-1)**

Michael L. Brooks, The Brooks Law Firm, Oklahoma City, Oklahoma, appearing for
Appellant.

Steven W. Creager, Assistant United States Attorney (Mark A. Yancey, United States
Attorney, and Kerry Blackburn, Assistant United States Attorney, with him on the brief),
Office of the United States Attorney, Oklahoma City, Oklahoma, appearing for Appellee.

Before **BRISCOE, MATHESON,** and **PHILLIPS,** Circuit Judges.

**MATHESON**, Circuit Judge.

Damion Tittle[1] pled guilty to violating 18 U.S.C. § 922(g)(1), which bars felons from possessing firearms. This crime carries a maximum sentence of 10 years, *see* 18 U.S.C. § 924(a)(2), but the Government argued Mr. Tittle's sentence should be enhanced under the Armed Career Criminal Act ("ACCA"), *see* 18 U.S.C. § 924(e)(1). The enhancement—a mandatory minimum term of 15 years—applies when a defendant has "three previous convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The district court concluded Mr. Tittle had three qualifying offenses and sentenced him to a prison term of 188 months, more than 15 years.

On appeal, Mr. Tittle argues he is not subject to an ACCA-enhanced sentence because one of his three prior convictions is not a qualifying offense. We agree. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we vacate his sentence and remand for resentencing.

## I. BACKGROUND

In August 2015, Mr. Tittle pled guilty to being a felon in possession of firearms. The written plea agreement specified that Mr. Tittle faced a penalty "based on the possible application of [the ACCA]" of "not less than fifteen years up to life imprisonment." App., Vol. 1 at 45. The agreement further provided that "[i]f [the ACCA] is found not to apply, the maximum penalty is up to ten years imprisonment." *Id.*

---

[1] Like the parties and the district court, we refer to the defendant by his proper last name of Tittle.

The Government argued for an ACCA sentence because Mr. Tittle had three qualifying Oklahoma state convictions:

1. unlawful distribution of cocaine;

2. unlawful trafficking in cocaine within 1,000 feet of a public park; and

3. feloniously pointing a firearm.

Mr. Tittle conceded the two cocaine convictions qualified as "serious drug offenses" under the ACCA, *see* 18 U.S.C. § 924(e)(2)(A), but he argued his conviction for feloniously pointing a firearm did not constitute a "violent felony" as defined by the ACCA, *see* 18 U.S.C. § 924(e)(2)(B).

Deciding whether a prior conviction qualifies as an ACCA predicate offense requires comparing the crime's elements to the ACCA. This elements-based comparison is known as the "categorical approach," which we discuss in detail below. Under it, if a crime's elements satisfy the ACCA definition, the offense counts as an ACCA predicate.

Mr. Tittle's 1996 firearm conviction was based on Okla. Stat. tit. 21 § 1289.16 (1995).[2] We considered this statute in *United States v. Hood*, 774 F.3d 638 (10th Cir.

---

[2] At the time of Mr. Tittle's underlying conduct on June 7, 1995, the statute read in relevant part:

> It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening or with the intention of discharging the firearm or with any malice or for any purpose of injuring, either through physical injury or mental or emotional intimidation, or for purposes of whimsy, humor or prank . . . .

Continued . . .

2014), and held it could be violated in both violent and nonviolent ways. *Id.* at 646. As such, *Hood* said a sentencing court must consult documents from the record of a defendant's prior conviction under § 1289.16 to discern whether the conviction was violent and therefore qualifies as an ACCA predicate. *Id.* at 645.

This process of examining the record is known as the "modified categorical approach." Described more fully below, this approach looks to the record documents to identify the relevant elements for the defendant's crime of conviction. *Hood* required application of the modified categorical approach to § 1289.16 convictions. *Id.*

When *Hood* was decided, the law in our circuit held that sentencing courts should apply the modified categorical approach when a defendant's statute of conviction contained alternative terms, regardless of whether those terms described different means of committing a single crime or different elements delineating separate crimes. *See United States v. Trent*, 767 F.3d 1046, 1058-61 (10th Cir. 2014), *abrogated by Mathis v.*

---

Cont.

Okla. Stat. tit. 21 § 1289.16 (1995). The statute was amended, effective September 1, 1995, by adding after the "whimsy, humor or prank" language: "or in anger or otherwise." 1995 Okla. Sess. Laws 1205-06. The parties sometimes refer to the amended version of the law, *see* Aplt. Br. at 11 (Mr. Tittle); Oral Arg. at 29:30-41 (Government), but we focus on the law as it applied to Mr. Tittle when he committed the offense. *See United States v. Sturm*, 672 F.3d 891, 897 n.5 (10th Cir. 2012) (en banc) ("Our analysis is limited to the version of the statute in effect at the time of the Defendants' conduct."). And in any event, this amendment does not affect our conclusion that Mr. Tittle's conviction for violating § 1289.16 does not qualify as a "violent felony" under the ACCA because consideration of the amendment would only strengthen our conclusion.

*United States*, 136 S. Ct. 2243, 2251 n.1 (2016). In 2016, the Supreme Court held in *Mathis* that the distinction between means and elements is important and that the modified categorical approach is available only when a statute lists alternative elements. 136 S. Ct. at 2253.

Because Mr. Tittle's sentencing occurred in 2015 before *Mathis* was decided, the parties and the district court relied upon *Hood*. Mr. Tittle argued his § 1289.16 conviction was non-violent and thus not an ACCA offense. The Government argued Mr. Tittle had violated § 1289.16 in a violent fashion because the factual summary in his state plea agreement included the following handwritten statement: "I pointed a weapon at [the victim] and threatened her life." App., Vol. 1 at 94.[3]

The district court followed *Hood* and applied the modified categorical approach by examining record materials from Mr. Tittle's state case to learn how he had violated § 1289.16. Based on the handwritten admission in the plea agreement, the court ruled Mr. Tittle had been convicted under the violent portion of § 1289.16 and that he therefore had three qualifying ACCA offenses. Applying the ACCA enhancement, the court sentenced Mr. Tittle to 188 months in prison.

---

[3] The plea agreement's factual summary includes other statements that were stricken by hand. Because we apply the categorical approach, we have no reason to examine this plea document or glean significance from these markings.

Mr. Tittle filed a timely notice of appeal in December 2015.  *See* Fed. R. App. P.

4(b)(1)(A)(i).[4]

On June 23, 2016, the Supreme Court decided *Mathis*, 136 S. Ct. 2243, which the

parties have addressed in their briefs.  *Mathis*'s effect on our *Hood* decision is the central

issue in this appeal.

## II.  **DISCUSSION**

We begin with our standard of review.  We then address relevant case law,

including *Mathis*, on how courts should determine whether a defendant's past convictions

warrant an ACCA enhancement.  Applying the law to Mr. Tittle's conviction under

§ 1289.16, we conclude it is not a qualifying ACCA offense and remand for resentencing.

---

[4] The Government initially argued Mr. Tittle could not appeal his sentence because his plea agreement waived his right to appeal.  The Government filed a motion asking us to enforce the waiver and dismiss Mr. Tittle's appeal.  *See generally* 10th Cir. R. 27.3(A)(1)(d); *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (discussing enforcement of appeal waivers).

A separate motions panel of this court denied the Government's motion.  It determined Mr. Tittle's waiver did not bar this appeal because "whether [his] sentence exceeds the applicable statutory maximum depends on the disposition of his challenge to the ACCA enhancement."  *United States v. Titties*, No. 15-6236, at 4 (10th Cir. May 18, 2016) (order denying motion to enforce appeal waiver).  The motions panel invited the Government to raise the waiver issue again "for fresh consideration and definitive disposition by the merits panel."  *Id.* at 5.

The Government accepted that invitation in its merits briefing.  *See* Aplee. Br. at 10-20.  Mr. Tittle replied that the motions panel had correctly determined the waiver was unenforceable.  *See* Aplt. Reply Br. at 1-3.  After briefing, the Government filed a motion asking us to strike the appeal-waiver arguments from its brief and "proceed directly to the merits of the appeal."  Mtn. to Strike at 2.  Mr. Tittle has expressed no objection.

We grant the Government's motion to strike and decline to address the appeal waiver.  We proceed to the merits of Mr. Tittle's sentencing appeal.

## A. *Standard of Review*

Whether a prior conviction satisfies the ACCA's violent felony definition is a legal question we review de novo. *United States v. Ridens*, 792 F.3d 1270, 1272 (10th Cir. 2015). But we typically review for plain error when on appeal "a defendant objects to an ACCA enhancement on grounds different from those presented in the trial court." *Hood*, 774 F.3d at 645; *see* Fed. R. Crim. P. 52(b).

The parties disagree about the standard of review. Mr. Tittle asserts our review should be de novo because *Mathis* had not been decided when he was sentenced and *Hood* foreclosed the argument he makes now—that we should apply the categorical approach to § 1289.16 convictions. *See Hood*, 774 F.3d at 645 (holding modified categorical approach applies to § 1289.16). The Government agrees that whether a prior conviction qualifies under the ACCA is a legal question but argues our review should be for plain error because Mr. Tittle did not object to the district court's use of the modified categorical approach under *Hood*.[5]

---

[5] We reject the Government's separate contention that we should not consider Mr. Tittle's argument at all because he invited error. *See United States v. DeBerry*, 430 F.3d 1294, 1302 (10th Cir. 2005) ("The invited-error doctrine prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." (quotations omitted)). The Government contends that Mr. Tittle invited any error because he requested that the district court use the modified categorical approach.

Mr. Tittle responds he did not invite error when he correctly informed the district court that *Hood* required use of the modified categorical approach. He argues the invited-error doctrine does not apply when a party relied on settled law that changed while the case was on appeal.

Continued . . .

-7-

We need not resolve this dispute. An illegal sentence—one "where the term of incarceration exceeds the statutory maximum"—"trigger[s] per se, reversible, plain error." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 739 n.10 (10th Cir. 2005) (en banc). As we will show, Mr. Tittle received an illegal sentence. We would therefore vacate his sentence under either standard of review.

## B. *Legal Background*

In this section, we (1) describe the ACCA enhancement, (2) explain the approaches courts use to determine whether a prior conviction is an ACCA-qualifying offense, and (3) discuss selection of the applicable approach.

### 1. **The ACCA Enhancement**

Absent an enhancement under the ACCA, "the felon-in-possession statute sets a 10-year *maximum* penalty." *Mathis*, 136 S. Ct. at 2248 (citing 18 U.S.C. § 924(a)(2)).

---

Cont.

We agree with Mr. Tittle. We rejected a similar invited-error argument in *Ray v. Unum Life Insurance Co.*, 314 F.3d 482, 486-87 (10th Cir. 2002). In *Ray*, the parties had assumed in the district court that one legal standard applied, but the law changed after appellate briefing. *Id.* at 486. We said "an intervening change in the law permits appellate review of an issue not raised below." *Id.* at 487; *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1222 (10th Cir. 1996) ("Although this argument was not raised below, inasmuch as [a new Supreme Court case] was decided after appellant filed her notice of appeal, we may consider changes in governing law arising during the pendency of the appeal."). We also find persuasive the Eleventh Circuit's refutation of the invited-error argument in *United States v. Jones*, 743 F.3d 826, 827-28 & n.1 (11th Cir. 2014) (rejecting government's invited error argument, addressing defendant's new argument based on intervening Supreme Court and circuit precedent, reviewing for plain error, and vacating defendant's ACCA sentence).

But the "ACCA prescribes a 15-year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm following three prior convictions for a 'violent felony.'" *Id.* "Serious drug offenses" can also count as ACCA predicate convictions. *See* 18 U.S.C. § 924(e)(1). Convictions by guilty plea qualify as ACCA offenses. *See Shepard v. United States*, 544 U.S. 13, 19 (2005). The government must show a past offense qualifies as an ACCA predicate. *See United States v. Delossantos*, 680 F.3d 1217, 1219 (10th Cir. 2012).

There is no dispute that Mr. Tittle has two "serious drug offenses." He is subject to the ACCA's 15-year mandatory minimum only if his 1996 Oklahoma conviction for feloniously pointing a firearm under § 1289.16 qualifies as a violent felony.

The ACCA's "force clause" defines violent felony as follows:

**(B)** [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—

    **(i)**    has as an element the use, attempted use, or threatened use of physical force against the person of another[.]

18 U.S.C. § 924(e)(2)(B)(i).[6] "[P]hysical force" in this definition "means *violent* force— that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see also United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992) ("[T]hreatened use of physical force means both an intent to use

---

[6] The ACCA's definition of violent felony also includes an "enumerated-offenses clause" and a "residual clause." *See* 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court invalidated the residual clause as unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Only the force clause is at issue here.

force and a communication of that intent." (quotations omitted)).[7]

## 2. **The Categorical and Modified Categorical Approaches**

The categorical and modified categorical approaches are not mutually exclusive alternatives. Courts always apply the categorical approach to determine whether a prior offense qualifies as an ACCA violent felony by comparing the elements of the crime of conviction to the ACCA. The modified categorical approach, by contrast, is not used in every case, but, when the statute of conviction is divisible in that it contains more than one crime, the modified categorical approach reveals the relevant elements for the comparison under the categorical approach.[8]

### a. *The categorical approach*

To determine whether a prior conviction is categorically an ACCA violent felony, courts do not consider the facts underlying the prior conviction, however violent those facts may be. Instead, the inquiry is whether the crime's elements satisfy the ACCA's definition of violent felony. If some conduct that would be a crime under the statute would not be a violent felony under the ACCA, then any conviction under that statute will not count toward an ACCA enhancement, regardless of whether the conduct that led

---

[7] The parties do not dispute that a conviction under § 1289.16 may be punished by more than a year in prison. *See* Okla. Stat. tit. 21 § 1289.17 (1995) (setting penalty of imprisonment for "not less than one (1) year nor more than ten (10) years").

[8] The categorical and modified categorical approaches are also used outside the ACCA context such as in applying Sentencing Guideline and immigration provisions. *See, e.g.*, *United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016) (Sentencing Guidelines); *Rangel-Perez v. Lynch*, 816 F.3d 591 (10th Cir. 2016) (immigration).

to the defendant's prior conviction was in fact violent.

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court established this elements-based approach to determine whether a conviction qualifies as an ACCA offense. The Court said, "Congress intended that the [ACCA] enhancement provision be triggered by crimes having certain specified elements." *Id.* at 588. This "formal categorical approach" looks to the elements of the statutes of conviction "and not to the particular facts underlying those convictions." *Id.* at 600. A prior conviction is an ACCA predicate only if the elements of the prior crime necessarily satisfy the ACCA definition. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *see also id.* at 2287 ("Congress . . . meant ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none.").

"[I]f the statute sweeps more broadly" than the ACCA definition—that is, if some conduct would garner a conviction but would not satisfy the definition—then any "conviction under that law cannot count as an ACCA predicate." *Id.* at 2283; *see also Mathis*, 136 S. Ct. at 2251 ("We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense."). This is so even when the defendant's conduct leading to the underlying conviction would satisfy the ACCA's violent felony definition. "[T]he mismatch of elements saves the defendant from an ACCA sentence," *Mathis*, 136 S. Ct. at 2251, because "[t]he key . . . is elements, not facts," *Descamps*, 133 S. Ct. at 2283.

-11-

b. *The modified categorical approach*

*Taylor* left open the possibility that "in a narrow range of cases" the sentencing court "may . . . go beyond the mere fact of conviction." 495 U.S. at 602. The modified categorical approach allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense, but this is done only for a limited purpose.

Courts employ the modified categorical approach when a prior conviction is based on "a so-called 'divisible statute,'" one that "sets out one or more elements of the offense in the alternative." *Descamps*, 133 S. Ct. at 2281. For these statutes, "[n]o one could know, just from looking at the statute, which version of the offense [the defendant] was convicted of," and there can be no categorical comparison of elements when the statute is unclear about which of the alternative elements formed the basis of the defendant's conviction. *Id.* at 2284. For courts faced with a divisible statute, "the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Mathis*, 136 S. Ct. at 2253. Once the relevant elements are identified, the court applies the categorical approach.

Courts consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative elements formed the basis of the

prior conviction. *Descamps*, 133 S. Ct. at 2284-85.[9] Although the record may reveal factual details of the offense, "[a] court may use the modified approach *only* to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Id.* at 2293 (emphasis added). With the elements (not the facts) identified, courts "can then do what the categorical approach demands" and compare those elements to the ACCA definition. *Id.* at 2281.

Thus, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute." *Id.* at 2285. "[I]t preserves the categorical approach's basic method" of comparing elements to the ACCA, but it "adds . . . a mechanism" to identify the relevant elements and thereby facilitates the categorical comparison "when a statute lists multiple, alternative elements, and so effectively creates several different . . . crimes." *Id.* (second ellipsis in original) (quotations omitted).

3. *Mathis*—**Means and Elements**

"The modified approach . . . has no role to play" when the statute of conviction is indivisible—i.e., when it lacks alternative elements. *Id.* at 2285; *see also id.* at 2282 ("[S]entencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."). Thus,

_____

[9] The Supreme Court has said courts may consult "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 559 U.S. at 144.

choosing the right initial approach is an essential step and depends on discerning whether the statute of conviction is "divisible." In *Mathis*, the Supreme Court clarified how courts should take this step.

a. *Elements as the key to divisibility*

A statute is divisible only if it "sets out one or more *elements* of the offense in the alternative." *Id.* at 2281 (emphasis added). It is not enough that a statute is framed in the disjunctive. As the Court stressed in *Mathis*, the statutory phrases listed in the alternative must be elements, not means. *Mathis*, 136 S. Ct. at 2256; *see also United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016) ("The Supreme Court recently clarified that a statute is considered divisible only if it creates multiple offenses by setting forth alternative elements."); *United States v. Gardner*, 823 F.3d 793, 802 (4th Cir. 2016) ("A crime is not divisible simply because it may be accomplished through alternative means, but only when alternative elements create distinct crimes.").

In *Mathis*, the Supreme Court defined the key distinction between "elements" and "means." "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis*, 136 S. Ct. at 2248 (quotations omitted). "[T]hey are what the defendant necessarily admits when he pleads guilty." *Id.* By contrast, means are "various factual ways of committing some component of the offense." *Id.* at 2249. Beyond these definitional differences, in determining whether a prior conviction is an ACCA offense, elements matter and means do not. A past conviction counts "if, but only if, its elements" satisfy the ACCA. *Id.* at 2247.

-14-

If the listed items are alternative means of satisfying an element, then the statute is not divisible and the categorical approach must be applied. *Id.* at 2253. If the alternatives are elements, then the modified categorical approach should be applied. *Id.*

Because the choice of approach hinges on whether the statute is divisible and because a statute's divisibility depends on the means/elements distinction, the Supreme Court in *Mathis* instructed that a court's "first task" when "faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means." *Id.* at 2256; *see also id.* at 2248 ("Distinguishing between elements and facts is . . . central to ACCA's operation.").

b. *Separating elements and means*

The *Mathis* decision identified several tools for deciding whether an alternatively phrased criminal law lists elements or means.

**First**, in some instances, the statute on its face will provide the answer. *Id.* at 2256. For example, "[i]f statutory alternatives carry different punishments, then under *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] they must be elements." *Id.* "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* Or sometimes the "statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.*

**Second**, state-court decisions may answer the question. "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.*

-15-

**Third**, when "state law fails to provide clear answers," federal courts "have another place to look: the record of a prior conviction itself." *Id.*[10] For instance, if an indictment or the jury instruction includes the statute's alternative terms, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element." *Id.* at 2257.[11] "Conversely, an indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

If these tools—statutory text, state law authority, and record documents—do not answer the means/elements question, then a court "will not be able to satisfy *Taylor*'s demand for certainty" that the offense qualifies as an ACCA conviction. *Id.* (quotations omitted); *see also United States v. Huizar*, 688 F.3d 1193, 1195 (10th Cir. 2012) (stating

---

[10] This "peek" at the record is different from the modified categorical approach. *See Mathis*, 136 S. Ct. at 2256-57. Unlike the modified categorical approach, which courts use to identify the particular elements in a divisible statute that underlie a defendant's conviction, this look at the record addresses a threshold issue: whether the statute is divisible. Thus, this "peek at the record documents is for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* (brackets and quotations omitted). "Only if the answer is yes can the court make further use of the materials" by applying the modified categorical approach. *Id.* at 2257.

[11] Likewise, the use of "a single umbrella term" in the charging document or instructions can reveal that the specific alternatives are means of satisfying a single element. *Id.* The dissent places great weight on the presence or absence of an "umbrella term," *see* Dissent at 13 & n.13, but *Mathis* says this is just one of several ways the means/elements inquiry might be settled, *see* 136 S. Ct. at 2256-57. In *Mathis* itself, the Court took a different route and relied on a state supreme court decision holding the statutory alternatives were means. *See* 136 S. Ct. at 2256. We do not rely on an "umbrella term" for our analysis.

we must be "certain" the prior conviction "necessarily" qualifies under the ACCA to apply the enhancement).

*    *    *    *

In sum, the Supreme Court's decisions instruct courts to decide first whether an alternatively phrased statute is comprised of elements or means and then, if the former, use the modified categorical approach to identify the relevant elements before applying the categorical approach.

### C. *Analysis*

We begin with *Mathis*'s impact on our conclusion in *Hood* that § 1289.16 is subject to the modified categorical approach. We conclude that we erred in *Hood* because § 1289.16 lists alternative means, not alternative elements. That conclusion compels us to use only the categorical approach and not use the modified categorical approach. Doing so, we find § 1289.16 is not categorically a violent felony. Although *Hood* failed to consider the means/elements distinction, *Hood*'s conclusion that § 1289.16 can be violated in non-violent ways survives *Mathis*. Under the categorical approach, therefore, § 1289.16 is not an ACCA violent felony. Because his § 1289.16 conviction does not count, Mr. Tittle does not have three qualifying offenses to warrant an ACCA enhancement. His sentence, therefore, is illegal.

1. **The Effect of *Mathis***

Mr. Tittle acknowledges that *Hood* determined the modified categorical approach applies to § 1289.16, but he argues that *Mathis* "requires reexamination of that

-17-

conclusion" because *Hood* did not consider whether § 1289.16's alternative phrases are means or elements. Aplt. Br. at 13. Mr. Tittle contends § 1289.16 lists alternative means and that we must vacate his sentence because *Mathis* is intervening, contrary Supreme Court authority relative to *Hood*. *See United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014) (explaining we are not bound by past panel decisions "when the Supreme Court issues an intervening decision that is contrary to or invalidates our previous analysis" (quotations omitted)). The Government contends "the rationale of *Mathis* does not plainly abrogate *Hood*." Aplee. Br. at 39.

We agree with Mr. Tittle. *Hood* bypassed the means/elements question and applied the modified categorical approach. But *Mathis* shows we erred in *Hood* to the extent we failed to consider whether § 1289.16's disjunctive phrases are means or elements. The Supreme Court requires us to begin the analysis where *Mathis* does—at the means/elements inquiry. *See Mathis*, 136 S. Ct. at 2256 (describing the means/elements issue as the "threshold inquiry" and a court's "first task").[12]

---

[12] When *Hood* was decided, Tenth Circuit law held the modified categorical approach applied regardless of whether a statute's alternatives were elements or means. *See Trent*, 767 F.3d at 1058-61. *Trent* understood the Supreme Court's discussion of "elements" in earlier cases to refer not to the "traditional view of what an element is" but rather to a broader meaning. *Id.* at 1059. In *Mathis*, the Supreme Court embraced the traditional view of elements and specifically abrogated *Trent*. *See* 136 S. Ct. at 2251 n.1, 2254.

The Government attempts to defend *Hood*'s use of the modified categorical approach by arguing that an "Alternative Analysis" section of *Trent* survived *Mathis*. But whether *Trent*'s alternative analysis survives is irrelevant here. What matters is the Supreme Court's holding in *Mathis* that "[t]he first task" is "to determine whether [the

Continued . . .

2. **Okla. Stat. tit. 21 § 1289.16 Is Not Divisible**

Mr. Tittle argues the text of § 1289.16 and state law are consistent with and arguably supportive of his view that the alternative statutory phrases in § 1289.16 are means, but he bases his argument primarily on the record materials, specifically the charging document from his 1996 conviction.

The Government's brief does not take a clear position on whether the alternative phrases in § 1289.16 are means or elements. Instead, the Government argues Mr. Tittle's conviction qualifies under the ACCA regardless of whether the categorical or modified categorical approach is used and that we need not address whether the alternatives are means or elements. Pressed at oral argument, the Government agreed with Mr. Tittle that the statutory phrases "probably are means." Oral Arg. at 27:54-57. The Government bases that conclusion on how § 1289.16 offenses are alleged—charging documents tend to include more than one of the alternative statutory phrases. *Id.* at 30:16-31:09.[13] As we show below, that is true of Mr. Tittle's charging document.

Using the three tools the Supreme Court identified in *Mathis*, we conclude § 1289.16 lists alternative means and is thus not a divisible statute.

**First**, we agree with the parties that the text of § 1289.16 does not answer the

---

Cont.

statute's] listed items are elements or means." *Id.* at 2256. *Hood* did not undertake that task, but we do in this opinion.

[13] This was true of the charging document in *Hood*. *See* 774 F.3d at 646.

-19-

means/elements question on its own. The statute contains disjunctive phrases. At issue

here are the terms listed after the words "for the purpose of." With that in mind,

§ 1289.16 provides in relevant part:

> It shall be unlawful for any person to willfully or without lawful cause
> point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or
> not, at any person or persons for the purpose of threatening *or* with the
> intention of discharging the firearm *or* with any malice *or* for any purpose
> of injuring, either through physical injury or mental or emotional
> intimidation, *or* for purposes of whimsy, humor or prank . . . .

Okla. Stat. tit. 21 § 1289.16 (1995) (emphasis added). The phrases are plainly

alternatives, but it is not clear whether they are different means to commit the same crime

or whether they define different crimes such that a jury would have to agree on a

particular alternative to convict.[14]

**Second**, the Oklahoma Court of Criminal Appeals ("OCCA") has not specifically

decided the divisibility question. But Oklahoma case law at least suggests § 1289.16 lists

alternative means to satisfy a single purpose element. In *Thompson v. State*, 169 P.3d

1198 (Okla. Crim. App. 2007), the court explained, "The language of § 1289.16 makes

clear that this crime is about the act of *pointing a firearm* at another person or persons

*with some kind of improper purpose.*" *Id.* at 1202 (second emphasis added). The court

---

[14] We limit our discussion to the alternative phrases addressing purpose because they are the source of the parties' dispute and because resolution of this case requires us to go no further. We conclude the purpose phrases are alternative means. Because at least one of these means is non-violent under the ACCA, § 1289.16 can be violated without committing an ACCA violent felony. We therefore need not consider whether the other disjunctive phrases in the statute would similarly show that § 1289.16 is not categorically a violent felony.

described "this crime" in the singular, not different crimes comprised of different elements, and the court appeared, by using the words "some kind," to lump together all of the alternative phrases into a single improper purpose element.

Additional support comes from *Wade v. State*, 624 P.2d 86 (Okla. Crim. App. 1981), in which the OCCA said, "Section 1289.16 requires that the act be done with at least one of several specified intents or purposes, *including* to threaten, or to injure by mental or emotional intimidation." *Id.* at 89 (emphasis added). The court's listing of some, but not all, of the purpose alternatives suggests they are illustrative examples satisfying the statute's purpose requirement. *See Mathis*, 136 S. Ct. at 2256 ("[I]f a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission.").

Oklahoma's Uniform Jury Instructions provide an additional source of state law guidance.[15] The relevant instruction provides:

> No person may be convicted of pointing a firearm unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:

---

[15] In cases like Mr. Tittle's where the defendant pled guilty and no jury instructions were given, the state's uniform jury instructions can provide insight into the means/elements question. *See, e.g.*, *United States v. Harris*, 844 F.3d 1260, 1266 n.2 (10th Cir. 2017) (consulting Colorado jury instructions to conclude statute was indivisible); *Gardner*, 823 F.3d at 802-03 (consulting North Carolina pattern instructions to conclude offense was indivisible); *United States v. Hamilton*, __ F. Supp. 3d __, No. 06-CR-188-TCK, 2017 WL 368512, at *10 (N.D. Okla. Jan. 25, 2017) (consulting Oklahoma Uniform Jury Instructions in means/elements analysis); *United States v. Bouziden*, No. CR-08-251-02-C, 2017 WL 149988, at *2 (W.D. Okla. Jan. 13, 2017) (same), *appeal filed*, No. 17-6031 (10th Cir. Jan. 31, 2017).

<u>First</u>, willfully;

<u>Second</u>, pointing a **shotgun/rifle/pistol/(deadly weapon)**, whether loaded or unloaded;

<u>Third</u>, at any **person(s)**;

<u>Fourth</u>, without lawful cause;

<u>Fifth</u>, **(for the purpose of threatening)/(with the intention of discharging the firearm)/(with any malice)/(for any purpose of injuring, either through physical injury or mental or emotional intimidation)/(for purposes of whimsy/humor/[a prank]/(in anger or otherwise).**[16]

Okla. Unif. Jury Instr. CR 6-42 (alterations in original). The instruction bunches together the statutory purpose alternatives into a single element. It does not suggest the jury would have to agree on a particular alternative to satisfy the fifth element.

On their own, none of these state law sources conclusively resolves the means/elements question, but together they all but establish that § 1289.16's purpose alternatives are means. We need not rest our conclusion only on these state law sources because *Mathis*'s third tool settles the issue.

**Third**, the record documents confirm that § 1289.16's alternative purpose phrases are means.[17] The charging instrument in Mr. Tittle's § 1289.16 case alleged:

_____

[16] The "in anger or otherwise" alternatives were added in a September 1995 amendment to the statute. *See supra* note 2.

[17] Recall that this "peek" at the documents does not constitute application of the modified categorical approach. It merely helps answer the means/elements question,

Continued . . .

That the said DAMION TYRONE TITTLE did wilfully [sic], feloniously and without lawful cause point a .380 caliber pistol . . . at [the victim], for the purpose of threatening and intimidating her, and with the unlawful, malicious and felonious intent then and there on the part of said defendant to injure the said [victim] physically, or for the purpose of mental or emotional intimidation, or whimsey [sic], humor or prank,

. . . .

contrary to the form of the statute in such case made and provided and against the peace and dignity of the State.

App., Vol. 1 at 78. The presence of several of the statutory purpose alternatives in the charging document is significant. *Mathis* explained that when a charging document reiterates the alternatives from the statute, "[t]hat is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." 136 S. Ct. at 2257.[18]

Based on the foregoing analysis of the *Mathis* tools, we conclude the alternative statutory phrases in § 1289.16 are means, not elements. Accordingly, § 1289.16 is not a

---

Cont.

which in turn answers whether the modified categorical approach should be used at all. *See Mathis*, 136 S. Ct. at 2256-57; *see also supra* note 10.

[18] As the dissent sees it, a prosecutor hoping to maximize the state's chances of winning a conviction might be expected to charge multiple statutory alternatives if each one is merely a means of committing the crime. *See* Dissent at 10-12. Regardless of what may have motivated the prosecutor in this case, Oklahoma clearly did charge multiple alternatives. We consider this significant because the dissent is right that "*Mathis* tells us to pay attention to whether the State has charged more than one alternative." *Id.* at 10. Indeed, *Mathis* states this "is as clear an indication as any that each alternative is only a possible means of commission, not an element." 136 S. Ct. at 2257.

-23-

divisible statute. Our conclusion in *Hood* that § 1289.16 is subject to the modified

categorical approach must yield to *Mathis*'s rule that if a statute's alternatives are means,

then "the court has no call to decide which of the statutory alternatives was at issue in the

earlier prosecution" by using the modified categorical approach. *Id.* at 2256. Because

§ 1289.16 is indivisible, we apply the categorical approach.[19]

---

[19] The Government argues that even if the district court erred in applying the modified categorical approach, it did not plainly err when it reasonably relied on *Hood*. We reject this argument because, as already discussed, an illegal sentence "trigger[s] per se, reversible, plain error." *Gonzalez-Huerta*, 403 F.3d at 739 n.10.

And in any event, the Government's plain error arguments miss the mark. The district court's reasonable reliance on *Hood* is beside the point. When the law changes on appeal, "it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *see also United States v. Madrid*, 805 F.3d 1204, 1212 (10th Cir. 2015) (explaining an error is plain "when case law alters the legal analysis between the time of trial and the time of appeal"); *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123-24 (10th Cir. 2005) (holding the district court plainly erred under a new Supreme Court decision handed down while the case was pending on appeal). *Mathis* makes plain that the means/elements inquiry is the "threshold inquiry," 136 S. Ct. at 2256, and *Hood* did not take that step.

The Government also contends that, even though § 1289.16's alternatives "probably are means," the statutory phrases may not *plainly* be means because the OCCA has not definitively answered the means/elements question. Oral Arg. at 27:54-28:22; *see also* Aplee. Br. at 37. But *Mathis* unambiguously instructs federal courts to settle, if possible, the means/elements issue when applying the ACCA even if there is no on-point state decision. *See* 136 S. Ct. at 2256-57 (instructing federal courts to examine record documents "if state law fails to provide clear answers"). More generally, the Government's argument overstates the importance of having an on-point decision to satisfy the plain error standard. *See Madrid*, 805 F.3d at 1212 n.10 ("[A]n error may be plain even if . . . there are no . . . cases that have directly opined on the question. Indeed, even if there is a split among our sister circuits . . . that would not necessarily prevent us from concluding that . . . [there] was clear or obvious error." (alterations in original) (quotations omitted)). Further, the Government's point about uncertainty favors Mr. Tittle because the Government bears the burden of proving a prior conviction qualifies under the ACCA, *see Delossantos*, 680 F.3d at 1219, and we do not count a prior

Continued . . .

3. **Applying the Categorical Approach**

We conclude that a conviction under § 1289.16 does not qualify as an ACCA offense because the statute's elements can be satisfied without "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). We decided this question in *Hood.* 774 F.3d at 646. *Hood*, although mistakenly using the word "elements" when it should have said "means," concluded that the "statute contains some alternative elements [i.e., 'means'] that would not require a threatened use of physical force." *Id. Mathis* does not affect *Hood*'s conclusion that § 1289.16 can be violated in non-violent ways. *Hood* correctly determined that § 1289.16, viewed as a whole, does not always "require a threatened use of physical force." *Id.*; *see also Johnson*, 559 U.S. at 140 (defining "physical force" in the ACCA as "*violent* force—that is, force capable of causing physical pain or injury to another person"). *Hood* arrived at this conclusion through its consideration of § 1289.16's purpose alternatives, which were the focus of (1) the parties' briefs[20] and (2) *Hood*'s

_____

Cont.

conviction if its ACCA qualification is suspect, *Mathis*, 136 S. Ct. at 2257 (discussing "*Taylor*'s demand for certainty").

In sum, the district court erred, though understandably so in light of *Hood*, by applying the modified categorical approach to this indivisible statute. The Government's efforts to use the plain error standard to insulate that error are unavailing.

[20] *See* Brief for Appellant at 46-47, *Hood*, 774 F.3d 638 (No. 13-6182), 2013 WL 6910087, at *46-47; Brief for Appellee at 46, *Hood*, 774 F.3d 638 (No. 13-6182), 2014 WL 1400517, at *46.

analysis of the charging document when the court applied the modified categorical approach. 774 F.3d at 646.

*Hood*'s holding that *some* of the purpose alternatives "would not require a threatened use of physical force" is enough, under the categorical approach, to disqualify § 1289.16 convictions as predicates for an ACCA sentence. *Id.* Our own examination of the statute leads us to agree. Indeed, as the government conceded in *Hood*, the "whimsy, humor or prank" alternatives are non-violent. *See* Brief for Appellee at 46, *Hood*, 774 F.3d 638 (No. 13-6182), 2014 WL 1400517, at *46. Because § 1289.16 can be violated without the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e)(2)(B)(i), it is not categorically a violent felony. *Hood*'s conclusion to that effect ends our inquiry. The Government's contrary arguments are unpersuasive.

4. **Government's Arguments**

**First**, the Government argues we should disregard as dictum our language from *Hood* that § 1289.16 can be violated in non-violent ways. We disagree. "[D]icta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand." *In re Tuttle*, 291 F.3d 1238, 1242 (10th Cir. 2002) (quotations omitted). "[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's *dicta*." *Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996). Our determination in *Hood* that a person could violate § 1289.16 in both violent and non-violent ways was essential to our analysis. That conclusion preceded our application of the modified

categorical approach, and we made clear our resort to the record documents was based on that determination. 774 F.3d at 646 ("*Since* this statute contains some alternative elements that would not require a threatened use of physical force, the modified categorical approach requires that we look to additional charging documents to determine the specific crime to which Hood pleaded guilty." (emphasis added)). Our decision that § 1289.16 was not categorically a violent felony was thus critical to our judgment in *Hood*.

**Second**, the Government argues that *Hood* left open § 1289.16's status under the categorical approach because we relied on the parties' agreement that the modified categorical approach was appropriate. But we did not decide that § 1289.16 failed the categorical approach just because the parties said so. We explained: "[B]oth parties believe that a modified categorical approach applies, *and we agree*." *Id.* at 645 (emphasis added); *see also id.* ("When a statute of conviction contains alternative elements—some of which do not require the threatened use of physical force—we use a modified categorical approach . . . .").

**Third**, the Government argues Mr. Tittle's conviction should count as an ACCA predicate because § 1289.16 is categorically a crime of violence. In *Hood*, the Government argued the opposite position. *See* Brief for Appellee at 46, 2014 WL 1400517, at *46 (conceding some alternatives are non-violent).

The Government contends our pre-*Hood* decision in *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010), supports its new position. We disagree. *Ramon Silva*

-27-

does not stand for the proposition that pointing a gun at a person inherently involves the threatened use of violent physical force, such that § 1289.16 must categorically be a violent felony.

*Ramon Silva* considered New Mexico's crime of "'apprehension causing' aggravated assault" under N.M. Stat. § 30-3-2(A). *Id.* at 669. We held the crime qualified under the ACCA because state court decisions interpreting the offense required "proof that [the] defendant threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe he or she was about to be in danger of receiving an immediate battery." *Id.* at 670 (alteration in original) (quoting *State v. Bachicha*, 808 P.2d 51, 54 (N.M. 1991)). Convictions under the New Mexico statute also required proof the defendant acted purposefully or engaged in conscious wrongdoing. *Id.* at 673 (citing *State v. Campos*, 921 P.2d 1266, 1277 n.5 (N.M. 1996)). We rejected the defendant's argument that the crime needed a specific intent element "to assault, injure or frighten" the victim. *Id.* at 672. It was enough that the proscribed conduct "communicates to [the] victim that [the offender] will potentially use '*violent* force' against the victim in the near-future" and "always has the potential to lead to '*violent* force.'" *Id.* at 670-71.

*Ramon Silva* is not instructive here. The New Mexico statute required "threatening" or "menacing" conduct done purposefully or with conscious wrongdoing that actually caused the victim to fear an imminent battery. Section 1289.16 *can* be violated by threats of physical injury, but it is far broader, reaching actions taken for

-28-

"purposes of whimsy, humor or prank."  Okla. Stat. tit. 21 § 1289.16 (1995).

As part of its argument that § 1289.16 should be considered a categorically violent felony, the Government reminds us that *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), declared that courts applying the categorical approach must "focus on the minimum conduct criminalized by the state statute" without applying "legal imagination" to consider hypothetical situations that technically violate the law but have no "realistic probability" of falling within its application.  *Id.* at 1684-85 (quotations omitted).[21]  It contends Mr. Tittle cannot prevail because he has not supplied "any case in which Oklahoma has prosecuted someone under § 1289.16 for pointing a firearm in obvious jest."  Aplee. Br. at 27 n.7 (quotations omitted).  Again, we disagree.

This is not a case where we need to imagine hypothetical non-violent facts to take a statute outside the ACCA's ambit.  Section 1289.16 reaches conduct undertaken for purposes of "whimsy, humor or prank" because the statute specifically says so.  The Government gives no persuasive reason why we should ignore this plain language to pretend the statute is narrower than it is.  It cites *United States v. Castillo*, 811 F.3d 342 (10th Cir. 2015), and, in a Rule 28(j) letter,[22] *United States v. Harris*, 844 F.3d 1260

---

[21] *Moncrieffe* and the case it relied on, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), arose in the immigration context, but we have applied the "realistic probability" test in ACCA cases.  *See Harris*, 844 F.3d at 1264; *United States v. Cummings*, 531 F.3d 1232, 1234 (10th Cir. 2008).

[22] *See* Fed. R. App. P. 28(j).

(10th Cir. 2017). But both cases found that crimes under the statutes at issue categorically qualified for sentence enhancements. *Castillo*, 811 F.3d at 349; *Harris*, 844 F.3d at 1270. Here, no legal imagination is required to see that the threatened use of physical force is not necessary for a conviction under § 1289.16. Where, as here, the statute lists means to commit a crime that would render the crime non-violent under the ACCA's force clause, any conviction under the statute does not count as an ACCA violent felony.

*Mathis* is instructive. The Court did not apply—or even mention—the "realistic probability" test. It found (1) the statute at issue listed alternative means and (2) some of those means did not satisfy the ACCA's generic burglary definition. 136 S. Ct. at 2250. The Court concluded, "Under our precedents, that undisputed disparity resolves this case." *Id.* at 2251. The Court did not seek or require instances of actual prosecutions for the means that did not satisfy the ACCA. The disparity between the statute and the ACCA was enough.[23]

---

[23] Persuasive case law from other circuits is against the Government as well. *See Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) ("[The] sensible caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes has no relevance to a case like this. The state crime at issue clearly does apply more broadly than the federally defined offense."); *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013) ("The statute's language . . . creates the 'realistic probability' that [the state] will punish crimes that do qualify . . . and crimes that do not."); *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 481 (3d Cir. 2009) ("[N]o application of 'legal imagination' to the Pennsylvania simple assault statute is necessary. The elements of [the crime] are clear . . . ."); *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) ("Where . . . a state statute explicitly defines a crime more broadly than the generic

Continued . . .

-30-

*   *   *   *

As *Hood* recognized, § 1289.16 does not necessarily require "the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i); *see Hood*, 774 F.3d at 646.  Section 1289.16 is therefore not categorically a violent felony.

5. **Mr. Tittle's Sentence Is Illegal**

Mr. Tittle received an illegal, over-maximum sentence.  Section 1289.16 is not categorically a violent felony under the ACCA.  It "swe[eps] more broadly" than the ACCA definition, and, under the categorical approach, no conviction for an overbroad statute can count as an ACCA predicate.  *Mathis*, 136 S. Ct. at 2248-49.  Because Mr. Tittle's § 1289.16 conviction does not qualify as an ACCA "violent felony," he lacks the three convictions required to trigger the ACCA enhancement.  Without the enhancement, the maximum sentence for Mr. Tittle's offense is 120 months, *see* 18 U.S.C. § 924(a)(2), which means his sentence of 188 months is illegal.  *See Gonzalez-Huerta*, 403 F.3d at 739 n.10 (explaining that a sentence is illegal "where the term of incarceration exceeds

---

Cont.

definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime.  The state statute's greater breadth is evident from its text." (citation omitted)); *accord United States v. Aparicio-Soria*, 740 F.3d 152, 158 (4th Cir. 2014) (en banc) ("We do not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors *will* charge defendants engaged in non-violent offensive physical contact with resisting arrest; we know that they *can* because the state's highest court has said so." (emphasis added)).

-31-

the statutory maximum").

Mr. Tittle is entitled to resentencing even under a plain error standard because illegal sentences "trigger per se, reversible, plain error." *Id.*; *see also United States v. Catrell*, 774 F.3d 666, 669 (10th Cir. 2014) (applying per se plain error rule and remanding for correction of illegal sentence); *cf. United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (holding improper application of ACCA sentence violated due process and "inherently result[ed] in a complete miscarriage of justice").

## III.  **CONCLUSION**

We vacate Mr. Tittle's sentence and remand for resentencing in conformity with the relevant statutory maximum of 120 months. *See* 18 U.S.C. § 924(a)(2).[24]

---

[24] In light of our disposition, we do not address Mr. Tittle's argument that his sentence violates due process.

15-6236, *United States v. Tittle*

**PHILLIPS,** Circuit Judge, dissenting.

Though I agree with most of the majority's well-crafted opinion, I disagree with its conclusion that Mr. Tittle's Oklahoma statute of conviction provides means, rather than elements, for its alternative purposes and intents. Because of this view, I would apply the modified categorical approach as set out in *United States v. Hood*, 774 F.3d 638 (10th Cir. 2014), find that Mr. Tittle's plea documents show that he was necessarily convicted of a predicate "violent felony," and affirm the district court's sentence.

## BACKGROUND

In 2015, Mr. Tittle pleaded guilty to a Superseding Information charging a single violation of 18 U.S.C. § 922(g)(1).[1] Though facing a sentence under the Armed Career Criminal Act (the ACCA), 18 U.S.C. § 924(e), Mr. Tittle elected to plead guilty to the Superseding Information's sole charge. Doing so kept Mr. Tittle from a much higher sentence had the jury convicted him on the methamphetamine charge. At sentencing, Mr. Tittle objected to his recommended sentence, contending that his Oklahoma conviction for feloniously pointing a firearm at another person did not qualify as a predicate violent felony under the ACCA.

In 1995, the State of Oklahoma charged Mr. Tittle with "willfully, feloniously and without lawful cause point[ing] a .380 caliber pistol, serial number 031625 at one

---

[1] In exchange, the government abandoned its Superseding Indictment charging possession of methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

Carolyn Williams, for the purpose of threatening and intimidating her, and with the unlawful, malicious and felonious intent then and there on the part of said defendant to injure the said Carolyn Williams physically, or for the purpose of mental or emotional intimidation, or whimsey [sic], humor, or prank[.]" App., Vol.1 at 78. In his written "Summary of Facts" in support of his guilty plea to this charge, Mr. Tittle wrote, "I was struck in the head with a skillet by Carolyn Ann Williams and then I turned and pointed a .380 pistol in [stricken word] direction unknown." App., Vol. 1 at 94. Mr. Tittle ran a line through this portion of his written statement. In unstricken language, Mr. Tittle continued, "I pointed a weapon at Carolyn A Williams and threatned [sic] her crazy[2] life DTT." *Id.*

### DISCUSSION

1. Elements or Means?

Now the question is whether Mr. Tittle's Oklahoma conviction for feloniously pointing a pistol at Ms. Williams qualifies as a violent felony under the ACCA. It does so if it has "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The majority rules that the purpose and intent alternatives listed in Okla. Stat. tit. 21 § 1289.16 are means of committing the crime, not elements. This, the majority concludes, requires it to apply the categorical approach and go no further. Then, under the categorical approach, the majority declares that the Oklahoma crime doesn't qualify as a predicate violent felony because one of the

---

[2] The word crazy was stricken from the sentence but is legible.

means—whimsy, humor, or prank—does not involve the threatened use of violent physical force. Majority Op. at 14.

The main issue before us is whether *Hood* remains good law. As the majority notes, we declared in *Hood* that the purpose and intent alternatives in Okla. Stat. tit. 21, § 1289.16 are elements, freeing us to apply the modified categorical approach. *Hood*, 774 F.3d at 645. Mr. Tittle argues that *Mathis v. United States*, 136 S. Ct. 2243 (2016), has abrogated *Hood*, rendering the alternatives listed in § 1289.16 as means rather than elements. If that's so, we cannot apply the modified categorical approach to resolve whether Mr. Tittle was necessarily convicted of an alternative requiring a purpose other than whimsy, humor, or prank.

In *Mathis*, the Court added another level atop its framework used to determine what convictions count as predicate violent felonies under the ACCA—whether the statute of conviction lists alternative means or alternative elements. *Hood* had no need to consider that question. *See United States v. Trent*, 767 F.3d 1046, 1058-61 (10th Cir. 2014) (abrogated by *Mathis*, 136 S. Ct. 2243, 2251 n.1) (holding that modified categorical approach applied whether a statute's alternatives were either elements or means). In determining where § 1289.16 stands after *Mathis*, it helps to examine that statute's language in place when Mr. Tittle committed the crime. I have marked the purpose and intent alternatives with my own brackets and numbers separating them:

> It shall be unlawful for any person to willfully or without lawful cause point a shotgun, rifle or pistol, or any deadly weapon, whether loaded or not, at any person or persons [1] for the purpose of threatening or [2] with the intention of discharging the firearm or [3] with any malice or [4] for any

3

purpose of injuring, either through physical injury or mental or emotional intimidation, or [5] for purposes of whimsy, humor or prank . . . .

Okla. Stat. tit. 21 § 1289.16 (1995). In his written plea statement, Mr. Tittle admitted the first alternative—pointing a gun at Carolyn Williams and threatening to kill her. We must decide whether the purpose and intent alternatives are means under *Mathis*, compelling the categorical approach and cordoning from the ACCA's reach Mr. Tittle's violent felony that his own admission proves he necessarily committed.[3]

2.    *Mathis* and *Shepard*

In *Mathis*, the Court considered whether a conviction of this Iowa burglary statute qualified as a violent felony under the ACCA:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 713.1. A separate section of the Iowa statutes defines "occupied structure" as follows:

> An "occupied structure" is any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an "occupied

---

[3] In *Taylor v. United States*, 495 U.S. 575, 602 (1990), the Court allowed the modified categorical approach "in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." In other words, the elements-based test ensured that a defendant had necessarily been convicted of a violent felony as defined in the ACCA. *Mathis* goes past that useful mechanism, disallowing violent-felony convictions even when a single qualifying means is charged. *See* 136 S. Ct. at 2259, 2266 (Breyer, J. dissenting).

4

structure" whether or not a person is actually present. However, for purposes of chapter 713, a box, chest, safe, changer, or other object or device which is adapted or used for the deposit or storage of anything of value but which is too small or not designed to allow a person to physically enter or occupy it is not an "occupied structure".

*Id.* § 702.12.

Because occupied structures such as "land, water or air vehicles" are not buildings or structures, they do not meet the location element of generic burglary as referenced in *Taylor v. United States*, 495 U.S. 575, 599 (1990) (concluding that generic burglary has an element of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime"). As does Iowa Code § 713.1, the Massachusetts statute exceeds generic burglary, covering unlawful entries into more locations than buildings and structures, that is, into a "vessel or vehicle." *Shepard v. United States*, 544 U.S. 13, 31 (2005).

In *Shepard*, because the government had no charging or plea documents that necessarily proved Shepard had been convicted of unlawful entry into a building or structure, the government attempted to show this with documents beyond those allowed in *Taylor*, 495 U.S. 575. *Id.* at 16. For instance, the government wanted to use police reports and complaint applications to make that showing. *Id.* The Court refused to extend *Taylor* to include these sorts of records. *Id.* at 26.

I note this language from *Shepard*: "In this particular pleaded case, the record is silent on *the generic element*, there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact." *Id*. at 25 (emphasis added). From this, we can

5

see that the *Shepard* Court treated buildings, structures, vehicles, and vessels as separate elements. That leaves us two questions: (1) did *Shepard* survive *Mathis*?, and (2) if it did, is Okla. Stat. tit. 21 § 1289.16 more like the Massachusetts breaking-and-entering statute in *Shepard*, or more like the Iowa burglary statute in *Mathis*?

For the first question, I note that Mr. Tittle does not contest that *Shepard* survived *Mathis*. This makes sense because *Mathis* neither claims to overrule *Shepard* nor casts doubt upon it. In fact, as I read *Mathis*, it approves of *Shepard*'s use of the modified categorical approach, because that approach is "for use with statutes having *multiple alternative elements*." *Mathis*, 136 S. Ct. at 2249 (emphasis added) (citing *Shepard*, 544 U.S. at 26). And the Court's language was no accident. In contrasting the Iowa burglary statute to the Massachusetts statute, *Mathis* declared that "[t]his case [*Mathis*] concerns a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element." *Id.* (citing *Schad v. Arizona*, 501 U.S. 624, 636 (1991)).[4]

---

[4] In *Schad*, a 5-4 decision, the Court affirmed a first-degree murder conviction even though the jury instructions did not require the jurors to agree "whether the defendant was guilty of premeditated murder or felony murder." 501 U.S. at 627. The Court rejected the dissent's view that the jury must say what separate statutory means of committing a crime it relied upon to find guilt. *Id.* at 635-37. The Court reasoned that statutory alternatives are not always "independent elements defining independent crimes under state law." *Id.* at 636. The Court looked to whether a State court had determined "that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime." *Id.* Thus, 13 years before *Shepard*, the Court had fully addressed the elements/means question. That it saw no need to apply this test in *Shepard* further supports the view that *Shepard*'s finding of elements remains good law.

Addressing the second question, I conclude that Oklahoma's statute is more like Massachusetts's statute, not Iowa's. Neither the Massachusetts statute nor the Oklahoma statute contains a broad statutory element with separately listed statutory examples, as does the Iowa statute with "occupied structures." And, as seen below, *Mathis* itself recognized the importance of this distinction.

3.      The *Mathis* Tools

In *Mathis*, the Court set out a framework to determine whether statutory alternatives are elements, or instead means. The framework breaks broadly into two general categories—state-law sources and non-state-law sources. Each has subparts to use in resolving the elements/means issue.

a.      State-Law Sources

The first *Mathis* tool asks whether the courts of the State of conviction have determined that the statutory alternatives in question are means or elements. In *Mathis*, beating the odds, the Court found an Iowa Supreme Court case holding that the statutorily listed burglary locations are means of committing the crime.[5] *Id.* at 2256 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). In particular, the Iowa court held that the statutorily defined list of "occupied structures" are "'alternative method[s]' of committing one offense, so that a jury need not agree whether the burgled location was a

---

[5] The *Mathis* dissent notes that "there are very few States where one can find authoritative judicial opinions that decide the means/element question." 136 S. Ct. at 2264 (Breyer, J. dissenting). In fact, addressing the question in *Mathis*, the government found just two States whose courts had answered the elements/means question for their burglary statutes. *Id.*

building, other structure, or vehicle." *Id.* (quoting *Duncan*, 312 N.W.2d at 523). This meant that the jury could convict Duncan of a single burglary charge even if the jurors disagreed about whether he had burgled the marina or, instead, a boat.[6] *See* Iowa Code § 702.12. So *Mathis* had its answer at the start of its analysis—its conclusion was "easy" because "a state court decision definitively answer[ed] the question." 136 S. Ct. at 2256 (citing *Duncan*, 312 N.W.2d at 523).

Addressing this same first tool, the majority acknowledges that Oklahoma courts have not spoken so plainly. Even so, the majority cites *Thompson v. State*, 169 P.3d 1198 (Okla. Crim. App. 2007), for support that Oklahoma might lean toward finding the alternatives to be means and not elements. In particular, the majority relies on this sentence from *Thompson*: "The language of § 1289.16 makes clear that this crime is about the act of pointing a firearm at another person or persons with some kind of improper purpose." Majority Op. at 20 (quoting 169 P.3d at 1202). I don't see how the reference to "this crime" means much. I'd expect that a court would use those words any time it refers to a single criminal statute. Nor do I see how the reference to "some kind of improper purpose" suggests means instead of elements. After all, a court applying *Shepard*'s breaking-and-entering statute could just as easily have described the statutorily listed burglary places as "some kind of specified location."

---

[6] In *Duncan*, the Iowa court's tolerance for lack of jury unanimity exceeded that at issue in *Schad*. In *Duncan*, the court permitted the jury to convict a defendant of "one overall burglary" even if jurors split over whether the defendant had burgled a marina or instead a boat in the dock, two different events. 312 N.W.2d at 520, 523-24.

8

The second *Mathis* tool asks what the state statute's text reveals on the elements/means question. *Mathis*, 136 S. Ct. at 2256. If the statute punishes statutory alternatives differently, that shows elements. *Id.* But if the statute's alternatives are "illustrative examples," that shows means. *Id*. (citing *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). And, finally, if the statute dictates what the prosecutor must charge, that may answer the elements/means question. *Id.* (citing Cal. Penal Code Ann. § 952).[7]

To support its view that the Oklahoma statute's alternatives are "illustrative examples," and thus means, the majority relies in part on this sentence from *Wade v. State*, 624 P.2d 86, 89 (Okla. Crim. App. 1981): "Section 1289.16 requires that the act be done with at least one of several specified intents or purposes, including to threaten, or to injure by mental or emotional intimidation." Majority Op. at 20. From this, the majority reasons that listing some purpose or intent alternatives "suggests they are illustrative examples satisfying the statute's purpose requirement." *Id.* at 20-21 (citing *Mathis*, 136 S. Ct. at 2256). I disagree. The quoted language doesn't rule out either elements or means. If the alternatives are elements, the prosecution can charge one alternative or more. If the prosecutor charges multiple alternatives, the verdict form will simply have to ensure that the jury unanimously finds the individual alternatives (however many) beyond a reasonable doubt. I'd expect a prosecutor to charge all of the alternatives if they're

---

[7] In part, this California statute requires that charging language must be "in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved." Cal. Penal Code Ann. § 952. Neither party has directed us to any similar Oklahoma statute.

9

merely means. If individual jurors may pick and choose which alternative is proved, it seemingly would favor the government to have as many choices as possible.

b.    Non-State-Law Sources

The first *Mathis* tool under the non-state-law category looks to the record of the earlier conviction—for instance, the charging document and jury instructions. Here, *Mathis* declared that a defendant's charge for burgling a "building, structure, or vehicle" would be "as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove beyond a reasonable doubt."[8] 136 S. Ct. at 2257. Moreover, the Court said, the same would be true if the state-court documents "use a single umbrella term like 'premises.'" *Id.* Conversely, *Mathis* noted, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

Here, as the majority notes, Mr. Tittle's charging document includes "several of the statutory purpose alternatives . . . ." Majority Op. at 23. Though *Mathis* tells us to pay attention to whether the State has charged more than one alternative, I can't see how this charging language should matter so much.[9] After all, different prosecutors will charge the

---

[8] This approach yields much authority to prosecutors to say what the law is. And, as we know from other ACCA cases, some prosecutors aren't precise in their charging documents, using forms incorporating the entire criminal statute underlying the charge.

[9] I recognize that when "pressed" at oral argument, the government's attorney (after a long pause) agreed with the questioning judge that the Oklahoma statute provides means and not elements, relying on the charging document's listing multiple alternatives. Majority Op. at 19. I remain puzzled by this concession.

same crime narrowly or broadly. Here, the prosecutor charged some alternatives, and not others.[10] The prosecutor's choices limited the State to alternatives it could rely on to convict. But had Mr. Tittle gone to trial, he could have demanded a special-verdict form itemizing each charged element (the purpose and intent alternatives), leaving a space for the jury to mark which, if any, it unanimously found applied beyond a reasonable doubt.[11] In a future case, we might see an Oklahoma prosecutor charge just one of the alternatives (say, pointing a firearm at a woman and threatening to kill her, as Mr. Tittle admitted doing). Would we switch positions there to say that the Oklahoma alternatives suddenly became elements?

In addition, though Mr. Tittle pleaded guilty, we can still look for guidance to Oklahoma's uniform jury instruction, which provides in part as follows: "Fifth, **(for the purpose of threatening)/(with the intention of discharging the firearm)/(with any malice)/(for any purpose of injuring, either through physical injury or mental or emotional intimidation)/(for purposes of whimsy/humor/[a prank]/(in anger or**

---

[10] Again, Mr. Tittle was charged with pointing a weapon at Carolyn Williams "[1] for the purpose of threatening and intimidating her," "[2] with the unlawful, malicious and felonious intent then and there on the part of said defendant to injure the said Carolyn Williams physically, or [3] for the purpose of mental or emotional intimidation, or [4] whimsey [sic], humor, or prank." App., Vol. 1 at 78.

[11] In *Shepard*, all five complaints from his Massachusetts burglaries "merely charged Shepard in the boilerplate language of the statutes, leaving it unclear just what kind of structure Shepard had entered." *United States v. Shepard*, 348 F.3d 308, 309 (1st Cir. 2003). The two Massachusetts statutes forbade breaking and entering into a building, ship, vessel, or vehicle, with intent to commit a felony. *Id*.

**otherwise).**"[12] *Id.* at 21-22 (quoting Okla. Unif. Jury Inst. CR 6-42). From this language and format, the majority concludes that "[t]he instruction bunches together the statutory purpose alternatives into a single element." *Id.* at 22. It further notes that "[the instruction] does not suggest the jury would have to agree on a particular alternative to satisfy the fifth element." *Id.*

I read the uniform instruction differently. If the alternatives are simply means, the instruction would have no need for the slash marks or parentheses. If the five alternatives are means, prosecutors might shortchange the State by not charging all of them. To me, the careful separation of the alternatives suggests that the government may charge one alternative alone as an element. And in that circumstance, the jury must unanimously agree that the government has proved that element beyond a reasonable doubt. Had Oklahoma meant for the five alternatives to be means, I would have expected it to list the alternatives as an unbroken group.

In addition, I see elements instead of means for two other reasons. First, the "whimsy, humor, prank" alternative is mutually exclusive from the others. Under a sensible reading, Mr. Tittle could not playfully point his gun at Ms. Williams and kiddingly say, "I'm going to kill you," and have a purpose to threaten. A joking "threat" isn't a threat. Second, not all of the means will apply in every instance. Here, I note that a

---

[12] As noted by the majority, the last alternative—in anger or otherwise—was added in September 1995, after Mr. Tittle's criminal conduct on June 7, 1995. Majority Op. at 22 n.14, 3-4 n.2.

defendant can violate the statute by pointing a dangerous weapon that is not a firearm (for instance, a knife?), yet the second alternative covers only an intent to discharge a firearm.

On this same point, as mentioned, *Mathis* directs us to look to whether the charging document or jury instructions "use a single umbrella term like 'premises.'" 136 S. Ct. at 2257. Here, they did not—and for a reason that strongly favors the government. Unlike the Iowa burglary statute considered in *Mathis*, which *does* contain an umbrella term ("occupied structure"), Oklahoma's statute contains no corresponding umbrella term.[13] Though an Iowa prosecutor can charge burglary of an "occupied structure," an Oklahoma prosecutor cannot charge pointing a gun with an "improper purpose."

CONCLUSION

Applying *Mathis*'s tools, I conclude that *Hood* correctly held that Okla Stat. tit. 21 § 1289.16 lists alternative elements. Thus, under *Hood*, we employ the modified categorical approach to the alternative elements, and Mr. Tittle, as part of his state plea, admitted to one of the alternative elements—pointing a firearm at Ms. Williams with a purpose of threatening her. His admission proves he necessarily was convicted of a violent felony—one with an element of the threatened use of physical force. In sum,

---

[13] Nor do the purpose-intent alternatives in the Oklahoma statute have a statutory umbrella term as in *Mathis*'s hypothetical of "a statute [that] requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify." 136 S. Ct. at 2249 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2289 (2013); *Richardson v. United States*, 526 U.S. 813, 817 (1999)). *Mathis* described this kind of list as "merely specif[ying] diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some component of the offense—a jury need not find (or a defendant admit) any particular item." *Id.* For me, this says it all. Unlike this hypothetical element of "deadly weapon" or the "occupied structure" element in the Iowa statute in *Mathis*, Oklahoma's statute has no general statutory component.

13

because I conclude that the Oklahoma statute's purpose and intent alternatives are elements, and because applying the modified categorical approach reveals that Mr. Tittle necessarily admitted to an alternate element qualifying his Oklahoma crime as a violent felony, I would affirm the district court's sentence imposed under the ACCA.