**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEILANI MARIE MARTINEZ,

    Defendant - Appellant.

No. 16-1393
(D.C. No. 1:14-CR-00388-WJM-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McKAY**, and **MORITZ**, Circuit Judges.

_____

A jury convicted Leilani Martinez on seven criminal counts: two counts of being a felon in possession of a firearm or ammunition, one count of possessing a firearm during and in furtherance of a drug-trafficking crime, one count of conspiring to distribute a controlled substance, and three counts of knowingly and intentionally distributing a controlled substance. She appeals. Finding no reversible error, we affirm.

---

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

## Background

In April 2014, the Pueblo Police Department learned that Leilani and Colter Martinez[1] were selling drugs from a residence on Agate Street in Pueblo, Colorado. A few days later, a confidential informant verified this report. Officers then surveilled the residence and observed activity consistent with drug trafficking. These observations led Pueblo Detective Michael Sincerbox to set up a controlled drug purchase between the informant and Leilani at the residence. During the controlled purchase, the informant handed $150 to Colter, who passed the money to Leilani. She then weighed some heroin and gave it to the informant.

Sometime after the controlled buy, Leilani moved to a new residence on James Avenue in Pueblo. Officers installed a "covert type camera" on a telephone pole nearby. R. vol. 3, 99. This camera captured activity similar to the activity observed at the previous residence—i.e., frequent traffic to and from the residence, with those who came and went often staying only a short while.

In June 2014, Sincerbox orchestrated a second controlled drug purchase between the informant and Leilani. This transaction occurred in the new residence's northwest bedroom. When the informant entered the bedroom, Leilani grabbed a safe from under the bed, handed it to Colter, and instructed him to complete the transaction. The informant gave $150 to Colter, who left the bedroom to weigh the

---

[1] Leilani and Colter are neither married nor biologically related. But for years they have referred to each other as brother and sister. To avoid confusion, we refer to them by their first names.

heroin in the kitchen. Colter returned to the bedroom and gave the heroin to the informant.

After this second controlled purchase, Sincerbox secured a search warrant for Leilani, her car, and the residence. Pueblo police officers subsequently trailed Leilani as she drove from her residence and eventually pulled her over. They then searched the residence and Leilani's car. In the northwest bedroom—the location of the second controlled purchase—they found (1) a loaded 12-gauge shotgun between the mattress and box spring; (2) a bag containing ammunition on top of the bed; (3) an unlocked safe under the bed, which contained about $1,300 in cash, a handgun, heroin, crack cocaine, and methamphetamine; and (4) 113 grams of methamphetamine and about 150 grams of heroin in several different packages within a larger bag in the bottom drawer of a dresser. In addition to the gun, ammunition, and drugs, the officers also found in the northwest bedroom (1) women's clothing; (2) a Western Union receipt bearing Leilani's name; (3) mail listing Leilani's name and address; (4) a stylized sign on the wall that read "Leilani," R. vol. 3, 122; and (5) medication belonging to Leilani on the nightstand. Further, the informant identified this bedroom as Leilani's room. In the northeast bedroom, officers found another shotgun and a black nylon tactical vest in the closet.[2] And in the living room they found a digital scale on a coffee table. In Leilani's car, officers discovered 50 grams of heroin and $938 in cash.

---

[2] Although this room is characterized as a bedroom, it did not contain a bed. And other than the tactical vest, it contained no clothing. But inside the room, officers did find a pink plastic box with the name "Poco" on it. "Poco" is Colter's street name. And the informant identified this bedroom as Colter's room.

Based on this evidence, the government charged Leilani with seven criminal counts, including being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and distributing and possessing with the intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). A jury convicted Leilani on all counts. She appeals.

**Analysis**

## I. Sufficiency of the Evidence

Leilani first challenges the sufficiency of the evidence for her convictions under § 922(g)(1) and § 924(c)(1)(A). We review Leilani's claim de novo and apply "the law in effect at the time of trial." *United States v. Benford*, 875 F.3d 1007, 1014 (10th Cir. 2017). "In doing so, we consider both direct and circumstantial evidence, and all reasonable inferences therefrom, in the light most favorable to the government." *United States v. Weidner*, 437 F.3d 1023, 1032 (10th Cir. 2006). We will find the evidence sufficient so long as "a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1123 (10th Cir. 2011).

To sustain a conviction under § 922(g)(1), "the [g]overnment [must] prove (1) knowing possession; (2) by a restricted person; (3) of any firearm or ammunition that has traveled in or affected interstate commerce." *United States v. Hien Van Tieu*, 279 F.3d 917, 922 (10th Cir. 2002), *abrogated on other grounds by Henderson v. United States*, 135 S. Ct. 1780 (2015). Similarly, as pertinent here, to sustain a

4

conviction under § 924(c)(1)(A), the government must prove the defendant possessed "a firearm in furtherance of a drug[-]trafficking crime." *United States v. Villa*, 589 F.3d 1334, 1341 (10th Cir. 2009). Because Leilani argues only that the government failed to prove she possessed the shotgun and ammunition, we focus solely on that element in evaluating the sufficiency of the evidence. Similarly, because the government presented no evidence that Leilani actually possessed these items, we analyze only whether it presented sufficient evidence to prove that Leilani constructively possessed them. *See United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002) (stating possession can be actual or constructive).

A person has constructive possession of a firearm or ammunition if, inter alia, he or she has dominion and control over the object. *United States v. Ledford*, 443 F.3d 702, 713 (10th Cir. 2005), *abrogated by Henderson*, 135 S. Ct. 1780. "Dominion, control, and knowledge, in most cases, may be inferred if a defendant had exclusive possession of the premises [where the firearm or ammunition was found]; however joint occupancy alone cannot sustain such an inference." *United States v. Mills*, 29 F.3d 545, 549 (10th Cir. 1994). Instead, when multiple individuals jointly occupy the premises, as we will assume was the case here,[3] the government must "show some connection or nexus between the defendant and the firearm [or

---

[3] The government argues that Leilani exclusively occupied the northwest bedroom, and therefore the jury could have inferred that she had knowledge of the firearm and ammunition. Leilani disagrees, asserting that the evidence showed she and Colter jointly occupied the bedroom. We need not resolve this disagreement because even assuming Leilani and Colter jointly occupied the bedroom, we conclude the government presented sufficient evidence for a reasonable jury to find that she knew about the shotgun and ammunition.

ammunition]." *Id.* In other words, convictions for constructive possession in joint-occupancy cases require "some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon [or ammunition]." *Id.* at 550 (quoting *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993)). Additionally, the individual must have intended to exercise dominion or control over the firearm or ammunition.[4] *See Henderson*, 135 S. Ct. at 1784. Here, Leilani contends that no reasonable jury could find beyond a reasonable doubt that she either (1) knew about or (2) intended to exercise control over the shotgun and ammunition.

### A.      Knowledge

Leilani first argues the evidence was insufficient to prove she knew about the shotgun and ammunition because (1) the shotgun was hidden from plain sight, (2) she never spoke about the shotgun, (3) no one saw her with the shotgun, and (4) neither her fingerprints nor DNA were found on the shotgun. According to Leilani, the only

---

[4] As we discuss below, *see infra* Part II.B., the parties agree the district court erred in failing to instruct the jury that constructive possession requires proof of intent. And because the district court failed to instruct the jury on this element of constructive possession, the jury didn't necessarily find it beyond a reasonable doubt. But for purposes of this appeal, that doesn't alter our approach to Leilani's sufficiency argument, under which we ask only whether a reasonable jury *could have* found that she intended to exercise dominion or control over the firearm and ammunition. *See Acosta-Gallardo*, 656 F.3d at 1123; *cf. Musacchio v. United States*, 136 S. Ct. 709, 715 (2016) (explaining that "a sufficiency challenge should be assessed against the elements of the charged crime" and that "[a] reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed"; instead, "[t]he reviewing court considers only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'" (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))).

evidence of her knowledge was the fact that police found the shotgun and ammunition in "a bedroom she and Colter shared." Aplt. Br. 27.

We disagree. To begin, the evidence overwhelmingly connects Leilani to the bedroom. Specifically, the bedroom contained (1) women's clothing—which the jury could have reasonably inferred belonged to Leilani; (2) mail bearing Leilani's name and address; (3) a receipt with Leilani's name on it; (4) medication belonging to Leilani; and (5) a stylized sign of Leilani's name. This evidence demonstrates Leilani "occupied th[e] room and had knowledge of its contents." *United States v. Mendez*, 514 F.3d 1035, 1042 (10th Cir. 2008), *abrogated on other grounds by Henderson*, 135 S. Ct. 1780; *see also Hien Van Tieu*, 279 F.3d at 922 & n.3 (finding that defendant had knowledge of firearm in jointly occupied room, in part because defendant "used the room to store his personal effects"); *United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993) (explaining that finding defendant's "personal belongings" in same room as firearms contributed to proof of defendant's knowledge of firearms in that room). The informant also testified at trial that the bedroom belonged to Leilani. *See Boykin*, 986 F.2d at 274 (explaining that witness' confirmation that defendant resided in jointly occupied room supported finding of defendant's knowledge of firearm in that room). Thus, a reasonable jury could have inferred that Leilani had knowledge of the shotgun. Indeed, this conclusion is particularly reasonable here, where a finding that the bedroom belonged at least partially to Leilani would give rise to a concomitant finding that she slept in the only

bed located in that room—the same bed where officers found the shotgun sandwiched between the mattress and box spring.

In arguing otherwise, Leilani relies on the Fifth Circuit's decision in *Mergerson*, 4 F.3d 337. There, the defendant was convicted of being a felon in possession of a firearm after officers found a handgun beneath the mattress and box spring in a bedroom that the defendant shared with his girlfriend. *Id.* at 348. On appeal, the defendant argued that the evidence was insufficient to prove he constructively possessed the firearm. *Id.* The Fifth Circuit agreed, noting that the weapon was hidden from plain view and "there were no other circumstantial indicia that established" the defendant's knowledge of the weapon. *Id.* at 349. In fact, the circumstantial evidence in that case pointed in the other direction—the evidence included a pawn-shop receipt that showed the defendant's girlfriend bought the handgun well before the defendant moved into the room with her. *Id.* at 348–49.

Here, Leilani doesn't point to any similarly exculpatory evidence that might indicate Colter purchased the shotgun. And unlike the handgun in *Mergerson*, which officers found underneath both the mattress *and* box spring, officers found the shotgun at issue in this case underneath the mattress alone, making it less likely that Leilani failed to notice the shotgun's contours as she slept. *Cf.* Daniel L. Graham, *Statutory Marksmanship: Enacting Laws That Reduce Gun-Related Crime and Accidents*, 4 Phx. L. Rev. 461, 468 (2010) ("[H]andguns are much smaller and lighter than . . . shotguns and are therefore easier to . . . conceal."). As such, the jury could have plausibly inferred that Leilani slept on the bed, and in turn knew about the shotgun

between the mattress and box spring. *See Mendez*, 514 F.3d at 1042 (holding that defendant knew about shotgun under mattress in jointly occupied room, in part because defendant slept on bed, which showed defendant "occupied th[e] room and had knowledge of its contents"); *Hien Van Tieu*, 279 F.3d at 919, 922 & n.3 (concluding that defendant knew about handgun in jointly occupied room under mattress on which he slept).

Evidence that Leilani knew there were drugs in the bedroom further establishes her knowledge of the shotgun. The informant testified that he purchased drugs from Leilani in the bedroom. And during the transaction, he saw Leilani reach under the bed, hand a safe to Colter, and instruct Colter to weigh the drugs in the kitchen. On the day of the search, officers found the safe under the bed and recovered drugs, money, and a handgun from inside the safe. Because the evidence showed Leilani knew there were concealed drugs in her bedroom, a reasonable jury could have inferred that she also knew about the shotgun sandwiched between the mattress and box spring. *See Mendez*, 514 F.3d at 1041–42 (finding that where evidence indicated defendant knew of drug ledger hidden under mattress in jointly occupied bedroom, defendant's awareness of ledger supported jury's finding that defendant was also aware of firearm found under same mattress); *United States v. Finney*, No. 93-5190, 1994 WL 263678, at *4 (10th Cir. June 16, 1994) (unpublished) (holding that there was sufficient evidence of defendant's knowledge of firearm in jointly occupied bedroom because defendant "rented the house, occupied the bedroom, and used the house as a base of operations for drug trafficking").

9

Moreover, the evidence was likewise sufficient to establish Leilani's knowledge of the ammunition. Officers found the ammunition in a bag in plain view on top of the bed. And on the day of the search, no one entered or exited the residence from the time Leilani left the residence until the time the officers searched it. Under these circumstances, a jury could have plausibly inferred that Leilani knew about the ammunition on top of the bed.

Viewing the evidence in the light most favorable to the government, we conclude that a reasonable jury could find Leilani was aware of both the shotgun and the ammunition.

## B.     Intent

Next, Leilani argues there was insufficient evidence of her intent to exercise control over the shotgun and ammunition because (1) there was no evidence she owned the shotgun; (2) there was no evidence she spoke of, used, or saw the shotgun; (3) there was no evidence she exercised control over the shotgun; and (4) the shotgun wasn't found in plain sight.

But Leilani ignores the overwhelming evidence of drug trafficking in the bedroom. *See United States v. Johnson*, 26 F.3d 669, 685 (7th Cir. 1994) (noting that court "will find that a defendant intended to use the firearm in facilitation of a drug[-]related crime 'if it [is] strategically located so as to be quickly and easily available for use during a *drug transaction*'" (second alteration in original) (quoting *United States v. Wilson*, 938 F.2d 785, 791 (7th Cir. 1991))); *cf. United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 (10th Cir. 2008) (stating that it's reasonable for jury to conclude firearms assist

drug dealers). Testimony established that Leilani was a high-level drug dealer who sold drugs to the informant in the bedroom. The evidence also showed the bedroom contained 133 grams of methamphetamine, 150 grams of heroin, $1,300 in cash, and distribution packaging. Further, witnesses identified the shotgun as a "tactical type shotgun"—as opposed to a shotgun that's used for sport—and testified that drug traffickers possess firearms to protect themselves, their products, and their proceeds. R. vol. 3, 334.

Accordingly, the jury could have reasonably inferred that (1) Leilani placed the shotgun and ammunition in the bedroom for the purpose of protecting herself and her drug supply during drug sales, and (2) she therefore intended, for purposes of § 924(c)(1)(A), to possess the shotgun. And it necessarily follows that the jury had sufficient evidence to find Leilani intended to possess the shotgun and ammunition under § 922(g)(1), as well. *See United States v. Rogers*, 556 F.3d 1130, 1140 n.5 (10th Cir. 2009).

Thus, we conclude the jury had sufficient evidence to find Leilani constructively possessed the shotgun under both statutes and the ammunition under § 922(g)(1).

## II.    The Jury Instruction

Leilani next challenges the jury instruction on constructive possession. The instruction applied to three of the seven charges at issue: (1) being a felon in possession of a firearm under § 922(g)(1); (2) being a felon in possession of ammunition under § 922(g)(1); and (3) possessing a firearm in furtherance of a drug-trafficking crime under § 924(c)(1)(A). Specifically, Leilani argues that the district court erred in failing to instruct the jury that in order to convict her of constructively

11

possessing the shotgun and ammunition, it had to find that she intended to exercise control over them.

## A.    Invited Error

Before reaching the merits of this argument, we note that Leilani didn't object to this instruction below. As a result, she argues in her opening brief that we should review this argument for plain error. *See United States v. Wolfname*, 835 F.3d 1214, 1217 (10th Cir. 2016) (explaining that when litigant merely fails to object to jury instruction below, we will nevertheless review that instruction on appeal, albeit under our rigorous plain-error test). The government disagrees. It points out that Leilani didn't simply fail to object to this instruction; rather, she stipulated to a proposed jury instruction that was identical to the one the district court ultimately provided. Thus, the government contends in its response brief, the invited-error doctrine precludes us from reviewing Leilani's challenge to that instruction on appeal at all—even for plain error. *Compare id.*, *with United States v. Jereb*, 882 F.3d 1325, 1338 (10th Cir. 2018) (explaining that invited-error doctrine "prevents a party who induces an erroneous ruling from being able to have it set aside on appeal" (quoting *United States v. Morrison*, 771 F.3d 687, 694 (10th Cir. 2014))), *and United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005) (noting that "invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party . . . urged the district court to adopt").

In her reply brief, Leilani doesn't dispute that she stipulated to the instruction. Nor does she dispute that such a stipulation would normally trigger the invited-error doctrine. But she nevertheless urges us to apply an exception to the invited-error rule: she points

out that if a party relied on settled law in advancing a particular position below, the party can advance a contrary position on appeal based on an intervening change in that settled law. *See United States v. Titties*, 852 F.3d 1257, 1264 n.5 (10th Cir. 2017) ("[T]he invited-error doctrine does not apply when a party relied [below] on settled law that changed while the case was on appeal."). And according to Leilani, our decision in *United States v. Little*, 829 F.3d 1177 (10th Cir. 2016), constituted just such an intervening change.

In support, Leilani asserts that before we decided *Little*, the government didn't have to prove a defendant intended to exercise control over a particular object to prove that he or she constructively possessed it. *Compare Little*, 829 F.3d at 1182 ("[C]onstructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object."), *with United States v. Colonna*, 360 F.3d 1169, 1178–79 (10th Cir. 2004) (concluding that intent to exercise control over contraband isn't required to prove constructive possession), *abrogated by Henderson*, 135 S. Ct. at 1784. Moreover, Leilani points out, this court decided *Little* on July 19, 2016—five months after her February 2016 trial. Thus, she insists, our decision in *Little* constitutes an intervening change in the law and the invited-error doctrine doesn't apply. *Cf. Titties*, 852 F.3d at 1264 n.5.

But as the government pointed out at oral argument, the law of constructive possession didn't change with our July 19, 2016 decision in *Little*. Instead, contrary to Leilani's assertion, the law changed more than a year before that, when the Supreme Court decided *Henderson* on May 18, 2015. *See Henderson*, 135 S. Ct. at 1784 (holding

that an individual constructively possesses a firearm when he or she, "though lacking . . . physical custody, still has the power *and intent* to exercise control over the [firearm]" (emphasis added)). In other words, *Little*—which we decided five months *after* Leilani's trial—merely recognized that *Henderson*—which the Supreme Court decided nine months *before* Leilani's trial—"change[d] the law of constructive possession." *Little*, 829 F.3d at 1182; *see also Titties*, 852 F.3d at 1269 (establishing that *Mathis v. United States*, 136 S. Ct. 2243 (2016), changed the law despite lack of Tenth Circuit case recognizing *Mathis*).[5] And because it has been settled since May 18, 2015, that intent is an element of constructive possession, Leilani didn't rely on settled law when she stipulated on February 22, 2016, to an instruction that erroneously omitted any reference to that element. *See Henderson*, 135 S. Ct. at 1784. Accordingly, we hold that the invited-error doctrine bars Leilani's challenge to the constructive-possession jury instruction.

---

[5] Although the parties don't mention it, we note that we have previously suggested, albeit in dicta, that *Little* changed the law of constructive possession in this circuit. *See United States v. Simpson*, 845 F.3d 1039, 1060 (10th Cir. 2017) ("During this appeal, the law changed when *our court held* that constructive possession contains an additional element: intent." (emphasis added)).

This distinction didn't matter in *Simpson* because both *Henderson* and *Little* postdated the *Simpson* verdict. Thus, the *Simpson* court had no reason to resolve whether it was *Henderson* or *Little* that changed the law of constructive possession in this circuit; either way, the law "changed while the case was on appeal." *Titties*, 852 F.3d at 1264 n.5. Accordingly, we aren't bound by *Simpson*'s pronouncement that it was *Little*, as opposed to *Henderson*, that changed the law. *Compare White v. Chafin*, 862 F.3d 1065, 1066 (10th Cir. 2017) ("[W]e cannot overrule published opinions by other Tenth Circuit panels."), *with Bates v. Dep't of Corr.*, 81 F.3d 1008, 1011 (10th Cir. 1996) ("[A] panel of this [c]ourt is bound by a holding of a prior panel of this [c]ourt but is not bound by a prior panel's *dicta*.").

Alternatively, even if we agreed with Leilani that the invited-error doctrine doesn't apply, we would treat her instructional challenge as forfeited and review it only for plain error. *See Jereb*, 882 F.3d at 1335. And because Leilani's challenge can't—for reasons we discuss below—"successfully run the gauntlet created by our rigorous plain-error standard of review," we would reject it on the merits. *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quoting *United States v. Bader*, 678 F.3d 858, 894 n.24 (10th Cir. 2012)).

### B. Plain Error

To succeed under plain-error review, Leilani must establish (1) an error; (2) that the error is plain; (3) that the error affected her substantial rights; and (4) that the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dazey,* 403 F.3d 1147, 1174 (10th Cir. 2005). But "[w]e apply plain error 'less rigidly when reviewing a potential constitutional error,' which is the case here because 'an improper instruction on an element of the offense violates the Sixth Amendment's jury[-]trial guarantee.'" *Benford*, 875 F.3d at 1016–17 (citation omitted) (first quoting *United States v. James*, 257 F.3d 1173, 1182 (10th Cir. 2001); then quoting *Neder v. United States*, 527 U.S. 1, 12 (1999)).

The government doesn't dispute that the district court erred in failing to instruct the jury that intent is an element of constructive possession. *See United States v. Kalu*, 791 F.3d 1194, 1204 (10th Cir. 2015) (stating that failure to include element of offense in jury instruction is error). Nor does the government dispute that the district court's error was plain. *See United States v. Taylor*, 514 F.3d 1092, 1100 (10th Cir. 2008) (explaining

15

that error is plain if it is "contrary to well-settled law"). Instead, the government argues that the error didn't affect Leilani's substantial rights.

To demonstrate that the instructional error affected her substantial rights, Leilani must "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)); *see also Benford*, 875 F.3d at 1017 (explaining that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome" (alteration in original) (quoting *Wolfname*, 835 F.3d at 1222)). Here, Leilani argues that the district court's failure to instruct the jury on intent as an element of constructive possession affected the outcome of her trial because the evidence supporting that element "was weak at best." Rep. Br. 16. Thus, she asserts, we "cannot have confidence that the jury would have found this thin evidence sufficient to prove intent beyond a reasonable doubt" had the district court properly instructed it. *Id.*

We recently rejected a similar argument in *Little*, 829 F.3d 1177. There, we held that the district court's failure to instruct the jury on intent as an element of constructive possession constituted harmless error because the evidence supporting that element was so "substantial" that any "reasonable jury would be compelled to conclude" the defendant "intended to exercise control over the weapons" at issue. *Id.* at 1183–84.

In reaching that conclusion, we pointed out that (1) officers found ammunition and two stolen firearms—one in a duffle bag on a bed and one under the bed—in a six-by-eight structure that the defendant rented; (2) officers discovered the firearms and

16

ammunition only seven and a half minutes after the defendant exited the structure; (3) the ammunition was in plain sight; (4) the owner of the structure testified that the defendant had placed a lock on the structure's door around the time the firearms were stolen; and (5) when the defendant learned the officers had discovered the two firearms, he asked, "They only found two?" *Id.* at 1183.

Citing the defendant's "exclusive control" over the small structure and "the seven and a half minutes he indisputably spent in it" immediately before the officers discovered the firearms and ammunition, some of which was in plain view, we noted that "it would be unreasonable to conclude that" the defendant was unaware of their presence. *Id.* And based on this finding, we held there was no reasonable probability that, but for the district court's failure to properly instruct the jury, it "would have found that [the defendant] had knowledge of the weapons at issue but lacked intent to exercise control over them." *Id.*

We recognize that the facts in *Little* differ from the facts before us. Most importantly, the defendant in *Little* exclusively occupied the structure at issue, whereas we assume Leilani and Colter jointly occupied both the residence and the bedroom where officers discovered the firearm and ammunition. But this distinction doesn't require us to reach a different conclusion. Like the jury in *Little*, the jury here found that Leilani knew about the shotgun and ammunition. And for the reasons we discuss above, *see supra* Part I.A., we find ample support for that finding.

Further, the evidence supporting the omitted intent element is even stronger here than it was in *Little*. Specifically, unlike the jury in *Little*, the jury in this case had before it overwhelming evidence of drug trafficking in the bedroom where the firearm and

17

ammunition were found. The government presented evidence that Leilani—a high-level drug dealer—sold drugs in the bedroom. The informant also testified that when he purchased drugs from Leilani in the bedroom, she reached under the bed and grabbed a safe. And on the day of the search, officers found a safe under the bed and drugs, money, and a handgun inside the safe. Further, officers located a loaded shotgun, ammunition, cash, drug-packaging materials, and large quantities of drugs in the bedroom. And the jury heard testimony that drug dealers use firearms for protection. This evidence points to the inescapable conclusion that Leilani intended to possess the shotgun and ammunition to facilitate her drug distribution. *See Johnson*, 26 F.3d at 685.

In light of this significant evidence, we conclude there's no reasonability probability that but for the district court's instructional error, the jury would have concluded that Leilani didn't intend to exercise control over the shotgun and ammunition. Thus, because Leilani fails to establish that the instructional error affected her substantial rights, she likewise fails to establish plain error. Accordingly, even if we reached Leilani's instructional challenge—which we conclude she waived under the invited-error doctrine—we would reject that challenge on the merits.

## III.    Evidentiary Issues

Next, Leilani raises three evidentiary issues. She asserts that (1) the district court erred in admitting certain expert testimony; (2) the district court erred in admitting other-acts evidence under Federal Rule of Evidence 404(b); and (3) the district court committed additional errors that, although individually harmless, require reversal under the cumulative-error doctrine.

18

We review for abuse of discretion a district court's rulings on the admissibility of evidence. *United States v. Apperson*, 441 F.3d 1162, 1194 (10th Cir. 2006). A district court abuses its discretion if its ruling is "arbitrary, capricious, whimsical[,] or manifestly unreasonable." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005) (quoting *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003)).

## A.    Expert Testimony

Leilani alleges the district court erred in admitting Detective Brian Roman's expert testimony, in which Roman explained the hierarchy within the drug-trafficking world, how drug traffickers use the identities of reputable people to protect product or assets, and what "throw phones" are and why drug traffickers use them. R. vol. 3, 668. Leilani argues (1) Roman's testimony wasn't helpful under Federal Rule of Evidence 702 and (2) the testimony was unfairly prejudicial under Federal Rule of Evidence 403. We reject both arguments.

### 1.    Helpfulness to the Jury

Under Rule 702, an expert's testimony must help the jury to "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In determining whether testimony is helpful, we employ "a common-sense inquiry" that asks "whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Leilani first argues that Roman's testimony wasn't helpful because the jury could have understood the evidence before it without specialized knowledge or training. But "we have long recognized that police officers can testify as experts based on their experience '[b]ecause the average juror is often innocent of the ways of the criminal underworld.'" *United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) (alteration in original) (quoting *United States v. Garcia*, 635 F.3d 472, 477 (10th Cir. 2011)). Thus, Roman's testimony aided the jury in understanding the intricacies of drug trafficking and in contextualizing the evidence already before it.

Leilani also contends Roman's testimony wasn't helpful because he failed to specifically identify the firearm at issue and tie that firearm to drug trafficking. The record belies this argument. Roman described the features of the shotgun, including its "pistol grip" and "extended tube." R., vol. 3, 670. And after discussing the differences between firearms designed for tactical use and those used for sport, Roman testified that the shotgun at issue here is "clear[ly a] tactical firearm" because of the pistol grip and extended tube. *Id.* Thus, Roman's testimony helped the jury differentiate between various types of firearms and infer that the shotgun in this case wasn't used for sport. The jury could further extrapolate that Leilani used the shotgun in furtherance of drug trafficking.

Next, Leilani argues that Roman's testimony wasn't probative of any fact of consequence in this case. Specifically, she asserts that Roman testified only about generalities of the drug trade—e.g., tools of the drug trade—without connecting any of these generalities to the facts in this case. Therefore, according to Leilani,

20

Roman's testimony would not have helped the jury decide whether she sold drugs. We think otherwise.

Whether Leilani sold drugs is a fact of consequence in this case. And even though Roman's testimony didn't expressly link Leilani to drug trafficking, his testimony contextualized the evidence already presented in a manner that allowed the jury to infer that Leilani was a drug trafficker. *See United States v. Medina-Copete*, 757 F.3d 1092, 1106 (10th Cir. 2014) (finding expert testimony relevant because it "contextualized the evidence that the jury had already seen"). For example, evidence at trial showed that investigators found a digital scale in the living room, and Roman testified that drug dealers often use digital scales to weigh specific quantities of drugs.

Because Roman's testimony was probative and helpful, the district court didn't abuse its discretion in admitting that testimony under Rule 702.

### 2.     Unfair Prejudice

Leilani also challenges Roman's testimony under Rule 403, which permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

Leilani's argument on this point is unclear. She asserts that Roman's testimony "created an emotional reaction [among the jurors] that [she] was a mid-level drug dealer," Aplt. Br. 42, but she fails to provide any support or explanation for this assertion. Likewise, she fails to explain how such an "emotional reaction" might have been so unfairly prejudicial as to outweigh the probative value of Roman's testimony.

*Id.* And we don't see how it would have been. We therefore conclude the district court acted within its broad discretion in admitting Roman's expert testimony under Rule 403. *See United States v. Cherry*, 433 F.3d 698, 702 (10th Cir. 2005) ("We afford district courts 'broad discretion in making rulings under Rule 403.'" (quoting *United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995))).

### B.     Other-Acts Evidence

Next, Leilani argues that the district court erred by admitting other-acts evidence. Evidence of other acts is inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence may be offered for a proper purpose, including showing knowledge, opportunity, intent, or absence of mistake. *Id.* 404(b)(2). In addition to being offered for a proper purpose, the evidence must be relevant and the danger of unfair prejudice must not substantially outweigh the evidence's probative value. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988). Finally, "the [district] court shall, upon request, instruct the jury that the [other-]acts evidence is to be considered only for the proper purpose for which it was admitted". *Id.* at 691–92.

Here, the government introduced evidence of Leilani's drug-related activity through the testimony of Detective Sincerbox and the informant. The evidence included testimony about (1) the first controlled purchase between the informant and Leilani; (2) a suspected hand-to-hand drug transaction between Leilani and a third party, which Sincerbox observed within three months of the search warrant's execution; and (3) several individuals whom Sincerbox observed entering Leilani's residence and

22

leaving within a short period of time, fewer than 72 hours before the second controlled purchase.

The government offered the prior-purchase evidence to show Leilani's knowledge of drug trafficking and that she purposely sold drugs. And it offered the other evidence to show her knowledge of drug trafficking and her opportunities to sell drugs. The district court admitted the evidence but issued a limiting instruction at Leilani's request. On appeal, Leilani contends the evidence was irrelevant and the danger of unfair prejudice substantially outweighed its minimal probative value. This argument fails for two reasons.

First, the other-acts evidence was relevant. The government charged Leilani with distributing and possessing with the intent to distribute a controlled substance. *See* § 841(a)(1). Under these circumstances, the government was required to prove beyond a reasonable doubt that Leilani knowingly and intentionally distributed or possessed with the intent to distribute a controlled substance. *See id.* (stating that it's "unlawful for any person [to] *knowingly or intentionally* . . . distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance") (emphasis added); *United States v. Carter*, 130 F.3d 1432, 1440 (10th Cir. 1997) (explaining that § 841(a)(1) requires government to prove "(1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it" (quoting *United States v. Reece*, 86 F.3d 994, 996 (10th Cir. 1996))). And under Rule 404(b), other-acts evidence is relevant to show a person's knowledge and intent if the other acts are similar and temporally proximate to the crimes charged. *See United States*

*v. Cardinas Garcia*, 596 F.3d 788, 797–98 (10th Cir. 2010) (explaining that "[t]o determine relevance under Rule 404(b), we must examine factors such as the similarity of the uncharged act to the charged conduct and the temporal proximity of the two acts"); *United States v. Watson*, 766 F.3d 1219, 1239 (10th Cir. 2014) (stating "that prior narcotics involvement is relevant when that conduct is close in time, highly probative, and similar to the activity with which the defendant is charged" (quoting *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000))).

Here, the other-acts evidence wasn't too remote because all the prior drug-related activity occurred within three months of Leilani's arrest. *See, e.g.*, *United States v. Mares*, 441 F.3d 1152, 1159 (10th Cir. 2006) (finding that evidence demonstrating defendant engaged in similar conduct one year before charged conduct was relevant). And the other-acts evidence concerned the same conduct and types of drugs as those charged in the indictment, making it highly probative of the fact that Leilani knew she was selling drugs and intended to do so. *See Watson*, 766 F.3d at 1237. Thus, we find this other-acts evidence relevant to show that when Leilani sold drugs to the informant during the second controlled purchase, she did so knowingly and intentionally.

Next, the evidence's probative value wasn't substantially outweighed by the danger of unfair prejudice. Leilani argues that the evidence portrayed her as a person with the character of a drug dealer who—the jury could have concluded—acted in conformity with that character by distributing heroin. And she contends that the district court's limiting instruction failed to explicitly prohibit the jury from using the evidence to prove she had a propensity to distribute drugs.

24

The district court informed the jury,

> You may consider this [other-acts] evidence only as it bears on [Leilani's] knowledge, or lack of knowledge of the drug[-]trafficking business, whether she had the opportunity to sell drugs or lack of mistake *and for no other purpose*. Of course the fact that [Leilani] is alleged to have committed an act that is not charged in the [i]ndictment does not mean that she necessarily committed the acts charged in this case.

R. vol. 3, 755 (emphasis added). Although the district court's limiting instruction isn't an exercise in precision, it did very clearly limit the purposes for which the jury could consider the other-acts evidence. Thus, we conclude the probative value of the other-acts evidence wasn't substantially outweighed by any risk of unfair prejudice and the district court didn't abuse its discretion in admitting the other-acts evidence under Rule 404(b).

### C.    Cumulative Error

In addition to the evidentiary errors alleged above, Leilani argues that the government engaged in impermissible witness vouching and that the district court incorrectly admitted testimony that amounted to impermissible hearsay. She concedes that these errors were individually harmless, but she maintains that their cumulative effect requires reversal. *See United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990) ("A cumulative-error analysis . . . aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.").

Leilani argues that Sincerbox improperly vouched for the informant's credibility in violation of Federal Rule of Evidence 608(a). But she didn't raise this objection below and doesn't argue for plain-error review in her opening brief. Therefore, the government contends that Leilani has waived this specific challenge. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court.").

Notably, Leilani doesn't respond to the government's waiver assertion in her reply brief. Nor does she advance a plain-error argument there. Thus, we find her vouching challenge waived and decline to consider it. *See In re FCC 11–161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting appellant's argument because appellant "ma[d]e no attempt" in reply brief "to rebut" appellee's response to that argument); *cf. Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) (noting that "[w]hen an appellee advances an alternative ground for upholding a ruling by the district judge, and the appellant does not respond in his reply brief or at argument," appellant "waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee"). And because Leilani has waived any challenge to the alleged vouching error, we refrain from undertaking a cumulative-error analysis; Leilani only alleges one additional evidentiary error, which she concedes is harmless on its own. *See United States v. Franklin-El*, 555 F.3d 1115, 1128 (10th Cir. 2009) (refraining from engaging in a cumulative-error analysis because defendant didn't establish multiple errors).

26

## Conclusion

We conclude the government presented sufficient evidence to support Leilani's convictions for possessing the shotgun and ammunition under § 922(g)(1) and for possessing the shotgun in furtherance of a drug-trafficking crime under § 924(c)(1)(A). And although we agree with Leilani that the district court erred in failing to instruct the jury on intent as an element of construction possession, we decline to reverse on this basis because Leilani invited the instructional error below. Further, even if we overlooked this affirmative waiver, the instructional error doesn't survive plain-error review.

Additionally, we hold that the district court didn't abuse its discretion by admitting Roman's expert testimony or the other-acts evidence. And we determine that we are precluded from conducting a cumulative-error analysis. Finally, we deny as moot the government's motion to supplement the record on appeal because the supplementary materials don't affect our analysis. *See United States v. Rivas-Macias*, 537 F.3d 1271, 1282 n.16 (10th Cir. 2008).

Entered for the Court

Nancy L. Moritz
Circuit Judge