**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FEUU FAGATELE,

    Defendant - Appellant.

No. 18-4004
(D.C. No. 2:17-CR-00062-DN-1)
(D. Utah)

_____

**ORDER**
_____

Before **MORITZ**, **McKAY**, and **CARSON**, Circuit Judges.
_____

This matter is before the court on the *United States' Motion to Publish Opinion*, which asks us to convert our unpublished November 5, 2019 Order and Judgment into a published opinion. Upon careful consideration, the motion is granted. The Clerk shall replace the November 5, 2019 Order and Judgment with the attached published opinion effective *nunc pro tunc* to the date the Order and Judgment was filed.


Entered for the Court,

ELISABETH A. SHUMAKER, Clerk


by: Chris Wolpert
    Chief Deputy Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 05, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

FEUU FAGATELE,

     Defendant - Appellant.

No. 18-4004

———————————————

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:17-CR-00062-DN-1)**
———————————————

Jessica Stengel, Assistant Federal Public Defender (Scott Keith Wilson, Federal Public Defender, District of Utah, with her on the briefs), Salt Lake City, Utah, for the Defendant-Appellant.

Ryan D. Tenney, Assistant United States Attorney (John W. Huber, United States Attorney, District of Utah, with him on the brief), Salt Lake City, Utah, for the Plaintiff-Appellee.

———————————————

Before **MORITZ**, **McKAY**, and **CARSON**, Circuit Judges.

———————————————

**MORITZ**, Circuit Judge.

———————————————

Feuu Fagatele appeals his 46-month prison sentence, arguing the district court erred in classifying Utah third-degree aggravated assault as a crime of violence under § 4B1.2 of the United States Sentencing Guidelines (U.S.S.G.). For the reasons

discussed below, we conclude third-degree aggravated assault "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Accordingly, we affirm Fagatele's sentence.

## Background

Fagatele pleaded guilty to one count of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). Based in part on Fagatele's 2013 Utah conviction for third-degree aggravated assault—an offense the Presentence Investigation Report (PSR) classified as a crime of violence—the PSR calculated a base offense level of 20. *See* U.S.S.G. § 2K2.1(a)(4) (assigning base offense level of 20 if "defendant committed any part of the instant offense subsequent to sustaining one felony conviction [for] a crime of violence"); Utah Code Ann. § 76-5-103 (2012) (defining third-degree aggravated assault as assault committed by person who uses dangerous weapon or "other means or force likely to produce death or serious bodily injury").

Fagatele objected, arguing in relevant part that third-degree aggravated assault does not constitute a crime of violence under § 4B1.2(a)'s elements clause. *See* § 4B1.2(a)(1) (defining crime of violence as offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). In support, he advanced three arguments. First, he asserted that third-degree aggravated assault "can be committed recklessly" and that only those statutes requiring proof of intentional force can satisfy the elements clause. R. vol. 1, 25. Second, he alleged that an individual can commit third-degree aggravated assault by "using force against *property*," *id.* at 27 (emphasis added), and pointed out that an offense only satisfies

2

the elements clause if it "has as an element the use, attempted use, or threatened use of physical force against the *person* of another." § 4B1.2(a)(1) (emphasis added). Third, he noted that third-degree aggravated assault encompasses assault committed by individuals who use "other means *or* force," § 76-5-103(1)(b) (emphasis added), and argued that to the extent "Utah law allows for 'other means' to form the basis of conviction," third-degree aggravated assault can *necessarily* "occur without the use of force," R. vol. 1, 92.

The district court rejected all three arguments. First, it ruled that contrary to Fagatele's assertion, reckless offenses can satisfy the elements clause. Second, it rejected Fagatele's assertion that an individual can commit third-degree aggravated assault by directing violent force against *property*, reasoning that § 76-5-103(1)(b) instead "puts the requisite *person* at the forefront." R. vol. 1, 111 (emphasis added).[1] Third, the district court concluded that Fagatele's other-means argument failed because (1) third-degree aggravated assault has simple assault as an element; (2) Utah's definition of simple assault requires proof of "threats, attempts, or acts, to do, cause, or create the risk of force to another," *id.* at 110 (citing Utah Stat. Ann. § 76-5-102 (2012)); and (3) an individual who commits any of these acts by using

---

[1] Although Fagatele argued below that reckless offenses fall outside § 4B1.2(a)(1)'s scope, he concedes on appeal that this argument is now foreclosed by circuit precedent and raises it only to preserve the argument for Supreme Court review. *See United States v. Bettcher*, 911 F.3d 1040, 1047 (10th Cir. 2018). Further, Fagatele does not pursue his force-against-property argument on appeal. Thus, except where relevant to the arguments Fagatele *does* pursue, we do not discuss either of these theories further.

"other means or force likely to produce death or serious bodily injury" under § 76-5-103(1)(b) necessarily "at least attempt[s] or threaten[s] the use of physical force," *id.* (quoting *United States v. Pam*, 867 F.3d 1191, 1210 (10th Cir. 2017)). Thus, the district court ruled that third-degree aggravated assault constitutes a crime of violence under § 4B1.2(a)(1).

The district court then adopted the PSR's proposed base offense level of 20; reduced the offense level by three points because Fagatele accepted responsibility for his offense, *see* U.S.S.G. § 3E1.1(a)–(b); and calculated a resulting Guidelines range of 51 to 63 months. But the district court ultimately varied downward from the Guidelines range and imposed a 46-month prison sentence. Fagatele now appeals his sentence.

**Analysis**

According to Fagatele, the district court erred in classifying third-degree aggravated assault as a crime of violence under § 4B1.2(a)(1)'s elements clause. In support, he advances two general arguments. First, he asserts that under the plain language of § 76-5-103(1), third-degree aggravated assault necessarily encompasses assaults committed by "means" *other than* force, and therefore force is not an element of the offense. § 76-5-103(1)(b). Second, he alleges that third-degree aggravated assault does not satisfy the elements clause because it can "be committed with a state of mind less than recklessness" and because only those offenses that require proof of "at least reckless[ness]" can satisfy the elements clause. Aplt. Br. 4, 31.

4

Before turning to these specific arguments, we begin by laying out a few general principles. As noted above, § 4B1.2's elements clause defines a crime of violence as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). For purposes of the elements clause, the phrase "physical force" means force that is both (1) physical and (2) violent. *Id.*; *see also United States v. Ontiveros*, 875 F.3d 533, 536–39 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2005 (2018). Physical force is "force exerted by and through concrete bodies— distinguishing physical force, from, for example, intellectual force or emotional force." *Stokeling v. United States*, 139 S. Ct. 544, 552 (2019) (quoting *Johnson v. United States*, 559 U.S. 133, 138 (2010)). Violent force, on the other hand, is "force capable of causing physical pain or injury to another person." *Id.* at 553 (quoting *Johnson*, 559 U.S. at 140).

With this understanding of what physical force *is*, we can turn to our next task: determining whether a particular offense has such physical force "as an element." § 4B1.2(a)(1). Notably, this inquiry goes beyond the question of whether the relevant statute requires proof that an offender *actually used* physical force. Instead, in determining whether a particular offense satisfies the elements clause, we ask whether that offense "has as an element" (1) the *actual* use of physical force, (2) the *attempted* use of physical force, or (3) the *threatened* use of physical force. *Id.*

To answer this question, we apply either the "pure categorical approach" or "the modified categorical approach." *United States v. Degeare*, 884 F.3d 1241, 1246 (10th Cir. 2018). Under the pure categorical approach, "we examine the statute—and only the statute—and ask whether 'it can be violated without the "use, attempted use, or

5

threatened use of physical force."'" *Id.* (quoting *United States v. Titties*, 852 F.3d 1257, 1273 (10th Cir. 2017)). If so, then the proscribed offense does not satisfy the elements clause. *See id.* (discussing 18 U.S.C. § 924(e)(2)(B)(i)'s elements clause); *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017) (explaining that "we look to the least of the acts criminalized by" relevant statute in determining whether that statute "realistically reaches any conduct that" does not satisfy § 924(e)(2)(B)(i)), *cert. denied*, 138 S. Ct. 702 (2018).[2]

"This pure categorical approach applies to statutes that aren't divisible, i.e., those that contain 'a single, indivisible set of elements.'" *Degeare*, 884 F.3d at 1246 (quoting *Descamps v. United States*, 570 U.S. 254, 258 (2013)). But "if the statute in question is divisible, i.e., if it 'contains more than one crime,'" we apply the modified categorical approach instead. *Id.* at 1246 (quoting *Titties*, 852 F.3d at 1265). Under the modified categorical approach, we may go beyond the language of the statute "to determine which of the statute's alternative crimes the defendant was actually convicted of committing." *Id.* "Once we make that threshold determination, we can then apply the categorical approach to the relevant statutory alternative." *Id.*

Here, the district court ruled that § 76-5-103(1)—which proscribes assault committed by a person who uses "(a) a dangerous weapon" or "(b) other means or force likely to produce death or serious bodily injury"—is indivisible. Notably, Fagatele does

---

[2] Because the language of § 4B1.2(a)(1)'s elements clause is identical to the language of § 924(e)(2)(B)(i)'s elements clause, we may look to cases interpreting the latter in determining how to apply the former. *United States v. Williams*, 559 F.3d 1143, 1147 n.7 (10th Cir. 2009).

not challenge this aspect of the district court's ruling on appeal. Indeed, he concedes the district court was correct in this regard. Thus, for purposes of this appeal, we assume without deciding that § 76-5-103(1) is indivisible, apply the pure categorical approach, and ask whether "the least of the acts criminalized by" § 76-5-103(1) constitutes a crime of violence under the elements clause. *Hammons*, 862 F.3d at 1054; *see also United States v. Kendall*, 876 F.3d 1264, 1269–71 (10th Cir. 2017) (assuming without deciding that relevant portion of statute was indivisible, applying categorical approach to that specific portion of statute, and concluding that defendant's offense categorically constituted crime of violence), *cert. denied,* 138 S. Ct. 1582 (2018). Further, because Fagatele also concedes that assault committed by a person who uses a dangerous weapon (as proscribed by § 76-5-103(1)(a)), satisfies the elements clause, we limit the remainder of our discussion to assault by a person who uses "other means or force likely to produce death or serious bodily injury" (as proscribed by § 76-5-103(1)(b)). That is, we ask whether § 76-5-103(1)(b) "can be violated without the 'use, attempted use, or threatened use of physical force.'" *Degeare*, 884 F.3d at 1246 (quoting *Titties*, 852 F.3d at 1273).

## A.    Other Means or Force

As relevant here, Utah defines third-degree aggravated assault as assault committed by an individual who uses "other means *or* force likely to produce death or serious bodily injury." § 76-5-103(1)(b) (emphasis added). By using the word "or" to separate the words "other means" from the word "force," Fagatele asserts, Utah's legislature necessarily distinguished between force and something "that is specifically *not*

7

force." Aplt. Br. 11 (emphasis added).[3] Thus, Fagatele insists, the plain language of § 76-5-103(1)(b) "makes clear that force is not required to sustain a conviction for third-degree aggravated assault." *Id.* Because the government concedes Fagatele raised this argument below, we review de novo the district court's ruling that § 76-5-103(1)(b) categorically satisfies the elements clause. *See United States v. Benton*, 876 F.3d 1260, 1262 (10th Cir. 2017). In doing so, we first ask whether third-degree aggravated assault requires force that is physical in nature and then ask whether the requisite force is violent. *See Ontiveros*, 875 F.3d at 536–39.

In answering the first of these two questions, we begin by noting that to commit third-degree aggravated assault under § 76-5-103(1)(b), a person must commit simple assault as defined by § 76-5-102. *See* § 76-5-103(1) (listing simple assault as element of third-degree aggravated assault). Section 76-5-102, in turn, defines simple assault as (1) "an attempt, with unlawful force or violence, to do bodily injury to another"; (2) "a threat, accompanied by a show of immediate force or violence, to do bodily injury to another"; or (3) "an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another." § 76-5-102(1). Thus, as the district court correctly ruled, an individual who commits third-degree aggravated assault under § 76-5-103(1)(b) necessarily causes bodily injury, attempts to

---

[3] The parties disagree about whether the adjective "other" modifies the noun "means" *and* the noun "force," or whether it instead modifies only the former. Because we need not resolve the parties' disagreement on this point to resolve this appeal, we assume without deciding that, as Fagatele maintains, the relevant portion of the statute prohibits (1) assault by an individual who uses "force" and (2) assault by an individual who uses "other means." § 76-5-103(1)(b).

8

cause bodily injury, threatens to cause bodily injury, or creates a substantial risk of bodily injury.

Critically, "[i]t is impossible to cause bodily injury without" using force that is physical, as opposed to force that is intellectual or emotional. *Ontiveros*, 875 F.3d at 536–39 (alteration in original) (emphasis omitted) (quoting *United States v. Castleman*, 572 U.S. 157, 170 (2014)). Thus, when *actual* bodily injury is an element of an offense, so too is the *actual* use of physical force—regardless of whether the requisite injury results directly, e.g., "from a kick or punch," or "indirectly," e.g., where an individual tricks someone "into drinking a poisoned beverage." *Id.* at 536–37 (quoting *Castleman*, 572 U.S. at 170–71); *see also Castleman*, 572 U.S. at 171 ("The 'use of force' . . . is not the act of 'sprinkl[ing]' the poison; it is the act of employing poison knowingly as a device to cause physical harm." (second alteration in original) (quoting Brief for Respondent at 37, *Castleman*, 572 U.S. 157, No. 12-1371, 2013 WL 6665058, at *37)).

Fagatele resists this conclusion, asserting that "other circuits have refused to reverse-engineer a prior conviction to fall within the [elements] clause" where a statute requires proof of injury. Aplt. Br. 21 (citing *United States v. Mayo*, 901 F.3d 218, 227 (3d Cir. 2018)). But because one panel of this court cannot overrule another in the absence of an "intervening" Supreme Court decision—and because Fagatele identifies no such intervening Supreme Court decision here—we remain bound by our holding in *Ontiveros*. *United States v. Doe*, 865 F.3d 1295, 1298–99 (10th Cir. 2017) (quoting *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014)); *see also Ontiveros*, 875 F.3d at 536–38 (holding that one cannot "cause bodily injury without the use of physical force" (quoting

9

*Castleman*, 572 U.S. at 170)). Thus, for purposes of the elements-clause analysis, we must treat the terms "bodily injury" and "physical force" as interchangeable: if a statute requires proof that the offender *actually caused* bodily injury, then the statute necessarily requires proof that the offender *actually used* force that is physical. *See Ontiveros*, 875 F.3d at 536–37. Likewise, if the statute requires proof that the offender *threatened or attempted* to cause bodily injury, then the statute necessarily requires proof that the offender *threatened or attempted* to use physical force. *See United States v. Benton*, 876 F.3d 1260, 1262–63 (10th Cir. 2017) ("There is therefore no basis for a distinction between threatening bodily harm and threatening physical force."), *cert. denied*, 138 S. Ct. 1576 (2018).

Further, for purposes of the elements-clause analysis, we treat the *risk* of bodily injury as synonymous with the *threatened use* of physical force. *See United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005) (reasoning that even if relevant statute did not require proof that defendant actually used force, statute nevertheless had "as an element the 'threatened use of physical force'" because statute required proof of conduct that "could always lead to more substantial and violent contact" (quoting U.S.S.G. § 2L1.2 cmt. 1(B)(iii) (2004)). Thus, if a statute requires proof of conduct that is "likely to produce bodily injury," then the statute necessarily "include[s] as an element the 'threatened use of physical force.'" *Id.* (quoting § 2L1.2 cmt. 1(B)(iii)); *see also id.* ("[I]f the statute is violated by contact that *can* inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the '*threatened* use of physical force.'" (emphases added) (quoting § 2L1.2 cmt. 1(B)(iii)));

10

*cf. United States v. Williams*, 893 F.3d 696, 703–04 (10th Cir. 2018) (rejecting

defendant's argument "that *Treto-Martinez* is no longer good law"), *cert. denied*, 139 S.

Ct. 795 (2019).

In asserting otherwise, Fagatele insists that we must not elide "the difference

between use of force and risk of injury" because doing so effectively "resurrects the

residual clause."[4] Aplt. Br. 24. But this argument overlooks the fact that the elements

clause does not encompass only those offenses that have as an element the *actual* use of

force; it also encompasses those offenses that have as an element the *threatened* use of

physical force. And this court has expressly equated the *threatened* use of force with the

*risk* of injury. *See Treto-Martinez*, 421 F.3d at 1160. Thus, in the absence of an

intervening Supreme Court decision, this challenge to the district court's ruling is also

foreclosed by binding circuit precedent.[5] *See Doe*, 865 F.3d at 1298–99.

---

[4] A previous version of § 4B1.2 included a residual clause, the language of which was identical to the language of § 924(e)(2)(B)'s now-defunct residual clause. *See Beckles v. United States*, 137 S. Ct. 886, 890 (2017) (noting that Court struck down § 924(e)(2)(B)'s residual clause as unconstitutionally vague under Due Process Clause). But the Court has since clarified that the Guidelines are not "subject to" such "vagueness challenges." *Id.* Thus, to the extent Fagatele suggests that we will run afoul of the Due Process Clause if we interpret § 4B1.2(a)(1)'s elements clause to encompass those offenses that have as an element the risk of physical force, we reject that argument. *See id.*

[5] Fagatele also alleges that the district court erred in relying on the fact that § 76-5-103(1) was "designed to protect people" in concluding that third-degree aggravated assault satisfies the elements clause. Aplt. Br. 25. But to the extent the district court addressed whether § 76-5-103(1) was designed "to protect against threats to personal safety," it did so in direct response to Fagatele's now-abandoned assertion that § 76-5-103(1) does not require the relevant force to "be directed against the person of another" as opposed to "against property." R. vol. 1, 31, 111; *see also supra* n.1; *Pam*, 867 F.3d at 1210–11 (indicating that when statute is designed "to protect against threats to personal safety, rather than threats to property," this

11

In sum, because simple assault as defined in § 76-5-102(1) requires proof that the offender caused bodily injury, attempted to cause bodily injury, threatened to cause bodily injury, or created a substantial risk of bodily injury, we hold that simple assault as defined in § 76-5-102(1) has as an element the actual, attempted, or threatened use of force that is physical in nature. *See Benton*, 876 F.3d at 1262–63; *Ontiveros*, 875 F.3d at 536–39; *Treto-Martinez*, 421 F.3d 1156, 1159–60. And because simple assault is an element of third-degree aggravated assault, the same is true of § 76-5-103(1)(b).

The remaining question is whether the physical force contemplated by § 76-5-103(1)(b) is *violent* physical force. *See Stokeling*, 139 S. Ct. at 552–54 (distinguishing between statutes that require proof of violent force—i.e., "force capable of causing physical pain or injury to another person"—and statutes that merely require proof of "slightest offensive touching" (quoting *Johnson*, 559 U.S. at 139–40)). Here, the district court answered that question in the affirmative. In support, it reasoned that regardless of whether an offender commits third-degree aggravated assault by using "other means *or* force," the offender must do so in a manner that is "likely to produce death or serious bodily injury." § 76-5-103(1)(b) (emphasis added). And it concluded that when a statute refers to force that is "likely to produce death or serious bodily injury," the force at issue is necessarily violent. R. vol. 1, 109–10.

indicates statute "requires that physical force be employed 'against the person of another'" (quoting § 924(e)(2)(B)(i)). Thus, contrary to Fagatele's assertion, the district court never suggested that a statute satisfies the elements clause merely because the statute's goal is to "protect against threats to personal safety." Aplt. Br. 25. Accordingly, we need not address Fagatele's assertion that the court erred in doing so.

Notably, Fagatele concedes in his opening brief that to the extent § 76-5-103(1)(b) "criminalizes conduct involving 'other means,'" it does so only if "those 'other means' are likely to produce death or serious bodily injury." Aplt. Br. 13 (quoting § 76-5-103(1)(b)). Indeed, the government expressly argues in its response brief that regardless of how we define the phrase "other means," such "other means" must be likely to produce death or serious bodily injury before those means will "satisfy" § 76-5-103(1)(b). Aplee. Br. 43 (quoting § 76-5-103(1)(b)). And Fagatele presents no argument to the contrary in his reply brief. In fact, he again acknowledges in his reply brief that to convict a defendant of third-degree aggravated assault, a jury must conclude "the assault was carried out with a dangerous weapon or *other means likely to produce death or serious injury*." Rep. Br. 2 (emphasis added) (quoting *State v. Tinoco*, 860 P.2d 988, 990 (Utah Ct. App. 1993)). And even if Fagatele had challenged the government's argument on this point, we would reject such a challenge: the phrase "likely to produce death or serious bodily injury" clearly modifies both "other means" and "force." § 76-5-103(1)(b); *cf. Potts v. Ctr. for Excellence in Higher Educ., Inc.*, 908 F.3d 610, 615 (10th Cir. 2018) (noting that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series" (alteration in original) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012))).

This conclusion renders it unnecessary to resolve the parties' disagreement over whether Utah's legislature intended for the terms "other means" and "force" to convey similar concepts or wholly separate ones. § 76-5-103(1)(b). Whatever these terms mean,

13

a defendant who uses either (1) "other means" *or* (2) "force" to commit simple assault only commits third-degree aggravated assault if he or she employs such "other means" or "force" in a manner that is "likely to produce death or serious bodily injury." *Id.* Thus, we need only address Fagatele's assertion that when an individual commits assault by using "other means" that are "likely to produce death or serious bodily injury," those other means nevertheless do not "categorically require[] the use, attempted use, or threatened use of physical force against another person." Aplt. Br. 17.

We reject this argument. As discussed above, an individual cannot commit simple assault under § 76-5-102(1)—or, by extension, third-degree aggravated assault under § 76-5-103(1)(b)—without at least threatening to use force that is *physical*. *See Ontiveros*, 875 F.3d at 536–39; *Treto-Martinez*, 421 F.3d at 1159–60. And because § 76-5-103(1)(b) confines such threatened physical force to the type that is "likely to produce death or serious bodily injury," it necessarily has as an element the threatened use of physical force that is *violent*. § 76-5-103(1)(b); *see also Benton*, 876 F.3d at 1263–64 (holding that when requisite force "is calculated or likely to produce death or serious bodily injury," such force is necessarily "capable of causing physical pain or injury to another person," and thus constitutes *violent* physical force (first quoting *State v. Bowers,* 721 P.2d 268, 272 (Kan. 1986); then quoting *Johnson*, 559 U.S. at 140)), *cert. denied*, 138 S. Ct. 1576 (2018); *Kendall*, 876 F.3d at 1272 ("[C]ommitting a violent act that creates a grave risk of causing significant bodily injury will always involve the use, attempted use, or threatened use of violent physical force."). Accordingly, we hold that

14

third-degree aggravated assault as defined in § 76-5-103(1)(b) has as an element at least the threatened use of violent physical force.[6]

## B.      Less Than Recklessness

In his second challenge to the district court's ruling, Fagatele asserts that (1) only those offenses that require proof of at least recklessness can satisfy the elements clause, and (2) § 76-5-103(1)(b) can be committed with a mens rea less than recklessness.

But as Fagatele acknowledges in his opening brief, this is *not* the same recklessness argument he raised in district court: there, he argued only that § 76-5-103(1)(b) can be committed with a mens rea of recklessness—not with something less than that. And as discussed above, he has expressly abandoned that argument on appeal. *See supra* n.1. Further, because the recklessness argument he raises on appeal is different from the one he raised below, we may review his new argument only for plain error. *See United States v. Woods*, 764 F.3d 1242, 1245 (10th Cir. 2014); *cf. United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017). Yet as the government points out, Fagatele does not make a plain-error argument in his opening brief.

In a civil case, Fagatele's failure to argue for plain error in his opening brief would ordinarily "mark[] the end of the road for" his new recklessness argument. *Richison v.*

---

[6] According to Fagatele, this conclusion erases the "careful distinction between" crimes that satisfy § 4B1.2(a)(1)'s elements clause and those that satisfy § 4B1.2(a)(2)'s enumerated-offenses clause. Aplt. Br. 19; *see also* § 4B1.2(a)(2) (stating that certain offenses, including aggravated assault, constitute crimes of violence). But Fagatele does not cite any authority holding that offenses cannot simultaneously satisfy both the elements clause and the enumerated-offenses clause. And this court has indicated they can. *Cf. United States v. Duran*, 754 F. App'x 739, 745 (10th Cir. 2018) (unpublished).

15

*Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). But as the government notes, this court has suggested that a defendant in a criminal case may raise a plain-error argument for the first time in a reply brief. *See United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016). And Fagatele's reply brief contains such a plain-error argument. We exercise our discretion to address that argument here. *Cf. id.*

To succeed under our rigorous plain-error test, Fagatele must show, inter alia, that (1) the district court erred and (2) its error was "plain"—i.e., clear or obvious under settled law. *United States v. Wolfname*, 835 F.3d 1214, 1217 (10th Cir. 2016). In the context of this case, that means Fagatele must show both (1) that offenses that can be committed with a mens rea less than recklessness plainly cannot satisfy the elements clause and (2) that third-degree aggravated assault as defined by § 76-5-103(1)(b) can plainly be committed with a mens rea less than recklessness. *See id.* at 1221. To demonstrate these matters are plain, Fagatele must demonstrate either that this court or the Supreme Court has resolved these matters in his favor, *see id.*, or that the language of the relevant statutes is "clearly and obviously" limited to the interpretation Fagatele advances, *United States v. Brown*, 316 F.3d 1151, 1158 (10th Cir. 2003).

The government does not dispute that an offense plainly cannot satisfy the elements clause unless it requires at least a reckless state of mind. *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (holding that 18 U.S.C. § 16's elements clause requires "a higher degree of intent than negligent or merely accidental conduct"). Instead, the government argues that Fagatele cannot show a mens rea less than recklessness will plainly suffice to violate § 76-5-103(1)(b).

16

We agree. Under federal law, a person acts recklessly if he or she consciously disregards a substantial risk of harm. *United States v. Mann*, 899 F.3d 898, 906 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2637 (2019). But according to Fagatele, a person can violate § 76-5-103(1)(b) even if he or she acted without "knowledge" that his or her conduct was "likely" to cause serious bodily injury. Aplt. Br. 28. In support, he cites *State v. Salt*, 347 P.3d 414 (Utah. Ct. App. 2015). There, the Utah Court of Appeals indicated that "specific intent to inflict serious bodily injury—*or knowledge that such injury is likely to occur*—is not required for a [§ 76-5-103(1)(b)] conviction." *Id.* at 420 (emphasis added). And this statement indeed suggests a defendant need not consciously disregard a substantial risk that his or her conduct will cause harm to another to violate § 76-5-103(1)(b)—thus indicating a defendant can commit third-degree aggravated battery with a mens rea less than recklessness as defined by federal law. *Compare id.*, *with Mann*, 899 F.3d at 906.

Yet even assuming we may look to the decision of a state's intermediate appellate court (as opposed to a decision of this court or the Supreme Court) to determine whether a particular error was plain, *cf. Wolfname*, 835 F.3d at 1221, the Utah Court of Appeals ultimately confined its holding in *Salt* to the question of whether *specific intent* to cause bodily injury is an element of third-degree aggravated assault, *see Salt*, 347 P.3d at 419–20. As Fagatele points out, the *Salt* court did initially characterize the defendant's argument in that case as asserting the district court erred in failing to "require the jury to find that [the defendant] acted with intent, *or knowledge, or recklessness* with respect to the result of his conduct." *Id.* at 419 (emphasis added) (citation omitted). But the *Salt*

17

court then reframed the defendant's argument, asking only whether the district court should have instructed the jury it could not convict the defendant unless it determined he "*specifically intended* to cause death or serious bodily injury." *Id.* (emphasis modified).

Notably, in rejecting this narrower version of the defendant's argument, the *Salt* court relied on a series of cases indicating only that specific intent is not an element of third-degree aggravated assault. In other words, none of the decisions the *Salt* court relied upon suggest that a defendant can commit third-degree aggravated assault without at least disregarding a known risk of harm. *See id.* at 419–20; *State v. Potter*, 627 P.2d 75, 78 (Utah 1981) (discussing jury instruction that stated defendant did not need "specific intent to violate the law"; noting that this instruction applied to charge of third-degree aggravated assault); *State v. McElhaney*, 579 P.2d 328, 328–29 (Utah 1978) (confirming that reckless mens rea can support conviction for third-degree aggravated assault; explaining that individual acts recklessly if he or she "is aware of but consciously disregards a substantial and unjustifiable risk that" harm will occur); *State v. Mangum*, 318 P.3d 250, 252 (Utah Ct. App. 2013) ("[T]here was no requirement to show specific intent in order to support [conviction for third-degree aggravated assault].").

Accordingly, we agree with the government: although *Salt* may contain some ambiguous language, it does not clearly or obviously demonstrate that a defendant can violate § 76-5-103(1)(b) with a mens rea less than recklessness. And because this means Fagatele cannot satisfy our plain-error test, we will not reverse on this basis. *See Wolfname*, 835 F.3d at 1217.

18

## Conclusion

Because (1) § 76-5-103(1)(b) categorically has as an element at least the threatened use of violent physical force; and (2) Fagatele fails to demonstrate that § 76-5-103(1)(b) can plainly be violated with a mens rea less than recklessness, we affirm the district court's ruling that third-degree aggravated assault constitutes a crime of violence under § 4B1.2(a)(1).